This action was commenced on August 2, 1945, by Benjamin M. Weil, trustee, plaintiff, against Biltmore Grande Reality Corporation, Charles E. Perry, Peter A. Adriansen, and E. M. Boerke, trustees, defendants, to foreclose a trust deed given on September 15, 1924, by Biltmore Grande Realty Corporation, hereinafter called "corporation," to secure the payment of $415,800 first-mortgage bonds, payable serially commencing with the year 1926. The bonds of the issue last due matured on September 15, 1934. The bonds bore interest at the rate of six and one-half per cent, payable semiannually. Interest coupons were attached to the bonds providing for the payment of six and one-half per cent interest. The interest on the bonds was paid up to and including September 15, 1932. The bonds due on that date, amounting to $17,000, were not paid. Bonds amounting to $296,800 maturing subsequently were not paid when due.
On January 29, 1926, second-mortgage notes to the amount of $50,000, bearing seven per cent interest, were issued, which were subsequently reduced by payment of $29,500, and interest thereon was paid to and including July 29, 1930.
After the default in the payment of the principal due September 15, 1932, and on December 5, 1932, corporation executed a warranty deed of the mortgaged premises to Arthur C. Best, Sherman G. Spurr, Charles E. Perry, and Peter A. Adriansen, trustees, under the first mortgage, and contemporaneously therewith the trustees issued a declaration of trust. It is not necessary to set out the declaration of trust in full. By its terms the trustees agreed to hold title to the property for a term of five years; to use their best efforts to see that it is properly protected and to manage it so as to produce as large an income as possible; they further agreed not to convey or, incumber except to convey to corporation for five years; they further agreed that at the expiration of that period, if the option had not been exercised, they would dispose of the property as might be directed by the holders of eighty per cent of *Page 15 
the first-mortgage bonds. The trustees did not assume the mortgage indebtedness or acquire any interest in the property other than as trustees. Under the option referred to, executed on December 5, 1932, contemporaneously with the deed and the declaration of trust, corporation was given the right to purchase the mortgaged premises on payment of principal and interest remaining unpaid on the bonds and coupons secured by the trust indenture, together with two per cent normal federal income tax and all other charges specified in said. bonds, coupons, and trust indenture.
It was further provided in the option that corporation should receive credit upon the purchase price from any net income from the mortgaged property and apply the same upon the payment due to bondholders. It was further provided that corporation should have no interest in the property upon its failure to exercise its option within the time limited.
On April 22, 1933, the trustees entered into a written agreement with the bondholders, the beneficiaries of the trust, more specifically stating the manner in which the trust was to be performed. To this agreement, the second-mortgage bondholders were parties. Corporation was not a party to this agreement. The trustees agreed that, in consideration of the conveyance to the trustees of the mortgaged premises by corporation, they would hold the mortgaged premises in trust for the following uses:
(a) To manage the mortgaged property and premises . . . . (Details relating to management.)
(b) That for three years from January 29, 1933, they would distribute the net income derived from the mortgaged property and premises in the manner therein specified.
(c) Then to invest any surplus in first-mortgage bonds either by purchase on the market or by private purchase.
(d) After three years from the 29th day of January, 1933, if the net income of the mortgaged property has been sufficient to pay the interest on the first-mortgage bonds, that the trustee would pay out of the net income interest to the second-mortgage bondholders. *Page 16 
There was included in (d) the following provision:
"Provided, however, that if Biltmore Grande Realty Corporation exercises its option to repurchase the mortgaged property and premises, the obligation of the mortgagor to pay interest on the second mortgage at the rate therein, and in said notes specified, shall remain unimpaired."
(e) It was agreed that after the 5th day of December, 1937, if the corporation had not exercised its option to repurchase the mortgaged property and premises as hereinbefore specified, upon payment of all sums due the holders of the first mortgage bonds then remaining outstanding, the trustees would continue to hold and manage the mortgaged property for an additional period of five years from said date and until the trust was terminated. (There was included a further provision relating to sale of the property which is not material in this case as no purchaser was found, except the following provision:)
"(b) If said price is in excess of the amount required to pay in full the principal of all outstanding first-mortgage bonds together with interest thereon and all other charges, the excess shall be paid to first-mortgage bondholders pro rata." (There were further agreements relating to payment to second-mortgage bondholders not material here.)
It was further agreed that in the event that by the 5th day of December, 1942, the trustees have been unable to sell the mortgaged property and premises at a price and upon such terms and conditions as the holders of eighty per cent in amount of outstanding first-mortgage bonds may agree upon, then the trustees agreed that within a reasonable time thereafter, they would terminate the trust in one of the manners thereafter prescribed.
The first manner was by the adoption of some plan for reorganization, the second, commencing proceedings in the proper court, for the partition of the mortgaged property and premises; and third, that in the event that the trust cannot be terminated by either of the two preceding methods, then by demanding that the trustee under the first mortgage or trust indenture, Benjamin M. Weil, or his successor in trust, should commence an action for the foreclosure of the said first mortgage or trust indenture, and carry said foreclosure action to conclusion. *Page 17 
It was further provided that the holders of the first-mortgage bonds might become parties to the agreement made by the trustees by the execution and delivery to the trustees of a written authorization, consent, and approval in the form there set out. The consent recited the terms of the trust relating to the management of the property, the distribution of the income from the property, and other matters already mentioned.
The fourth paragraph of the consent, executed by eighty per cent of the holders of the first-mortgage bonds, was as follows:
"The undersigned bondholders do hereby waive any rights that they may have to collect, demand or receive payment of the principal of their bonds or interest thereon in accordance with the original terms thereof in consideration of the obligation of the trustees to distribute the net income of the property, and the proceeds from the sale thereof, as in said trust agreement and as hereinbefore set forth, and they agree to take no action to compel foreclosure of said trust indenture or first mortgage during the continuance of said trust."
The bondholders further agreed to detach all interest coupons and, in lieu thereof, accept participating certificates which were to be attached to the bonds. These participating certificates provided that the income from the mortgaged property and premises is to be distributed in the manner already stated. The certificate contained this clause:
"This certificate is supplementary to and a part of the hereinbefore mentioned bond and is for the benefit only of the holder thereof and shall be transferable only in conjunction with said bond and shall not be detached therefrom."
The participating certificate provided for indorsement on the bonds.
Corporation failed to exercise its option. The trustees terminated the trust and this action to foreclose the mortgage or trust deed was commenced by the trustees.
The case was tried by the court. Corporation contends that the bondholders lawfully waived their right to the payment *Page 18 
of their bonds in full with interest by entering into the agreement with the trustees. The court found in favor of the bondholders and judgment was entered accordingly on July 25, 1946, from which the corporation appeals.
In view of the very explicit language of the documents, it is difficult to state the position of corporation in this case. As we understand it the first contention of corporation is that the first-mortgage bondholders agreed to modification of the trust deed with respect to interest on their bonds. This contention is based upon the claim that the bondholders consented to have the interest coupons detached and to have income-participating certificates attached to the bonds in lieu of the interest coupons.
In the instrument entitled Consent and Approval of Bondholders, reference to which has already been made, it is to be noted that according to the terms of par. 4 of the consent and approval of bondholders already set out, the bondholders waive their right to collect, demand, or receive payment of the principal of their bonds or interest and to take no action to compel foreclosure of the trust indenture during the continuance ofsaid trust.
The contention of corporation that the arrangement between the trustees and the bondholders modified the trust indenture of September 15, 1924, must fail because corporation which was the mortgagor was not a party to that arrangement. There can be nothing more certain than that a contract can only be modified by the concurrence of all the parties to the instrument. *Page 19 
It is further to be noted that in the trustees' participating certificate it is provided:
"This certificate is supplementary to and a part of the hereinbefore mentioned bond and is for the benefit only of the holder thereof . . . ."
This would seem completely to extinguish the claim of corporation that the arrangement between the trustees and the bondholders was for the benefit of the mortgagor.
It is further contended that the arrangement between the trustees and the bondholders resulted in a novation with respect to the payment of interest and relieved the defendant from full compliance with the terms of the original trust indenture. Just how the mortgagor was to be relieved from its promise to pay the indebtedness secured by the trust instrument by an agreement to which it was not a party and which was not made for its benefit and which did not substitute for corporation as original debtor any other debtor, it is difficult to understand. The trustees did not promise to pay the indebtedness. They promised to deal with the income from the property and premises in the manner prescribed by the agreement between the trustees and the bondholders. They nowhere or in no way assumed to pay the indebtedness of corporation.
The trial court correctly concluded that the bondholders did not waive their right to the payment of interest according to the original trust indenture and that the evidence does not warrant a finding that the bondholders have been estopped to assert their claim to the full amount provided for by the original trust indenture.
By the Court. — Judgment affirmed. *Page 20