LAKESHORE COMMERCIAL FINANCE CORPORATION, a Wisconsin corporation, Plaintiff-Appellant-Petitioner,

v.

Daniel DROBAC, Commercial Construction Company, and F.M. Land Corp., a Wisconsin corporation, Defendants-Respondents,

Lucille G. DROBAC, P-R-D-D-K Co., a Wisconsin general partnership, and Rolling Acres Company, a Wisconsin general partnership, Defendants.†

Supreme Court

*No. 80–1848. Argued March 2, 1982.—Decided June 2, 1982.*

(Also reported in 319 N.W.2d 839.)

† Motion for reconsideration denied, with costs, on July 2, 1982. CECI, J., took no part.

For the plaintiff-petitioner there were briefs by *Robert K. Steuer, Thomas L. Skalmonski* and *Weiss, Steuer, Berzowski, Brady & Donahue* of Milwaukee, and oral argument by *Robert K. Steuer.*

For the defendants-respondents there was a brief by *Samuel J. Recht, Joan P. Clark* and *Quarles & Brady* of Milwaukee, and oral argument by *Mr. Recht.*

HEFFERNAN, J.   This is a review of a decision of the court of appeals[1] affirming a judgment of the circuit court for Milwaukee county, DAVID V. JENNINGS, JR., Circuit Judge, which dismissed the plaintiff's com-

[1] Unpublished Opinion, July 21, 1981.

plaint for failure to state a claim upon which relief could be granted.

We reverse the decision of the court of appeals and remand to the circuit court for further proceedings.

The basic question posed is whether a contract can be effectively modified by less than all of the original signatories to the contract. If such modification is valid as to the participants in the modification, can the contract affect the rights or obligations of signatories to the original contract who did not participate in the modification. We conclude that the signatories entering into the modification can validly alter the contract in respect to each other, but that they cannot change the rights or obligations under the contract of an original signatory who did not join in the modification. If, however, a signatory to the original contract is a guarantor only and the modification is material, that party is discharged of that obligation. The discharge of the obligation as a guarantor does not, however, diminish rights conferred under the contract to a person merely because that person is also a guarantor.

In the instant case, the original contract, executed in 1977, provided in part that an indebtedness to Lakeshore Commercial Finance Corporation could be satisfied by payment in the amount of $330,000 on or before June 30, 1980. The modification agreed upon in 1979 changed that date—the last date available for a pre-payment discount —from June 30, 1980, to December 31, 1979. Lakeshore, relying upon this changed date, brought its action on January 7, 1980, based upon default in payment. The trial court, however, found the 1979 modification a nullity, because Lucille Drobac, a party to the 1977 agreement, did not join in the modification agreement. The trial court held that Lucille Drobac was an obligor under the original contract and that the change in the last date for payment without default was detrimental to her in-

terests. It concluded that the original contract remained in force in respect to all its signatories, and under that 1977 agreement there could be no default prior to June 30, 1980. It concluded that the action was premature. Accordingly, it dismissed the complaint because it failed to state a claim upon which relief could be granted.

The underlying facts of this case are derived from the complaint and from the exhibits which are appended thereto. The facts show that previous actions had been brought by Lakeshore in 1976 against two corporations and Daniel Drobac and Lucille Drobac, his wife, to compel payments on promissory notes and guaranties. A 1976 action by Lakeshore was dismissed when, in June 1977, Lakeshore entered into an agreement with two Wisconsin corporations—Commercial Construction Company and F.M. Land Corporation—and Daniel Drobac, who was the president of both of the corporations, and Lucille Drobac. By the terms of the agreement, each corporation was required to execute a new promissory note to Lakeshore, to guarantee the payment of the other corporation's note and to execute a continuing guaranty for the obligations of the other corporation to Lakeshore. The individuals, Daniel and Lucille Drobac, were each required to guarantee the payment of the corporate notes by affixing their signatures on the reverse side, to execute continuing guaranties for all the obligations of each corporation to Lakeshore, and to secure payment by delivering mortgages and assignments of certain real and personal property. The corporations and the Drobacs released Lakeshore from any claims that might have arisen out of any earlier transactions.

In consideration of these promises, Lakeshore dismissed the actions then pending against the two corporate defendants and Daniel and Lucille Drobac. Notes were executed in accordance with the agreement, and they were made subject to various provisions incorpo-

rated therein. The notes were for a term of four years, with provisions for principal and interest payments, acceleration, and prepayment discounts according to an agreed upon schedule.

The most significant portion of the 1977 agreement in respect to the case on review is contained in paragraph 4. It provides:

"4. Notwithstanding anything to the contrary set forth in this Agreement or its notes, mortgages or other documents executed by the parties with respect to this Agreement, it is hereby agreed between the parties that in the event Lakeshore receives cash payments, whether denominated principal or interest, of an amount of $260,000 on or before December 31, 1978 or $300,000 on or before June 30, 1979, or $330,000 on or before June 30, 1980 from any one or more of Commercial, F.M., Daniel Drobac or Lucille Drobac, then in that event, all liability of Commercial, F.M., Daniel Drobac and Lucille Drobac to Lakeshore with respect to the notes referred to herein shall be deemed fully paid, satisfied and discharged. Payments by guarantors shall be deemed to be payment to secure release from liability on the guaranty agreements to the extent of the amount of the payment."

The complaint also alleged that on January 2, 1979, the original agreement was amended by a writing entered into by Lakeshore, Daniel Drobac, and the two corporations. This second agreement purported to leave the 1977 agreement untouched except that it reduced the maturity time for the previously executed notes from four years to three and one-half years, and the final date for the prepayment discount provision in the original agreement was changed from June 30, 1980, to December 31, 1979. The consideration for this change was recited to be an additional advance to Daniel Drobac in the sum of $15,000.

The only signatories to this amending agreement were Lakeshore Commercial Finance Corporation, by its presi-

dent, and Daniel Drobac, individually and as president of Commercial Construction Company and F.M. Land Corporation. Lucille Drobac was not a signatory to this amending agreement, and there are no allegations in the complaint that she acquiesced to, or participated in, the 1979 agreement.

The complaint recited that F.M. Land Corporation and Commercial Construction Company were liable as makers on their own notes and guarantors of each other's note, and that Daniel and Lucille Drobac were guarantors on both notes. Demand for judgment was in the amount of $363,598.78 on the F.M. note and $31,832.78 on the Commercial Construction note. Liability was asserted against Daniel and Lucille Drobac only as guarantors. Each of the defendants separately moved to dismiss the complaint on the ground that it failed to state a claim upon which relief could be granted.

The memorandum brief submitted to the circuit court by the defendants' attorneys makes clear the rationale of the motion to dismiss. They rely upon the assertion that a contract can be modified only by a concurrence of all the parties and then point out that Lucille Drobac was not involved in the modification agreement. Accordingly, the position of the defendants in the trial court and in all proceedings thereafter was that the 1979 agreement was a nullity and that, under the only valid agreement, the 1977 agreement, no default could occur until after June 30, 1980.

The trial court accepted the reasoning of the defendants, concluded that the action was premature, and dismissed the complaint. In so doing, the trial court relied upon the statement in *Weil v. Biltmore Grande Realty Corp.*, 251 Wis. 13, 18, 27 N.W.2d 713 (1947), that:

"There can be nothing more certain than that a contract can only be modified by the concurrence of all the parties to the instrument."

In a memorandum opinion which followed the court's original decision, the trial court, in less than explicit language, indicated that Lucille Drobac appeared to be a co-obligor. It apparently based this conclusion on the fact that she was obliged to mortgage two parcels of real estate as security under the original agreement; and inferentially, therefore, her status was not that of a mere guarantor. In that memorandum opinion the court also recited that the 1979 agreement, which she did not sign, was detrimental to Lucille Drobac's interests, because it called for an earlier payment date.[2]

The court of appeals affirmed, in a per curiam opinion. That opinion, without elaboration, followed the trial court's conclusion that Lucille Drobac was a co-obligor. Citing *Weil v. Biltmore Grande Realty Co., supra,* it agreed with the trial court that a contract cannot be modified by less than all of the parties to the original instrument; and it, like the trial court, concluded that, because not all the parties to the original agreement agreed to the 1979 modification, the 1977 document was not affected and remained the only agreement between the parties. We conclude the court of appeals erred in affirming the circuit court. We reverse.

---

[2] On June 21, 1980, the same day the trial court filed its memorandum opinion, the parties entered into a stipulation reciting that the total liability of the defendants to the plaintiff was $271,-721.33, and that, upon the receipt of that sum from any of the defendants, the plaintiff would release all collateral described in the 1977 agreement. Additionally, the stipulation released Lucille Drobac "from all obligations, claims or demands by the plaintiff." It is acknowledged by the parties to this review that Lakeshore actually received the amount specified in the stipulation. Hence, the only issue which would remain upon remand to the trial court is the liability of the three remaining defendants for additional sums due on the notes, because those defendants did not take advantage of the prepayment discount option by December 31, 1979, as provided by the modified agreement. It thus appears that by stipulation Lucille Drobac is not a party to the appeal or this review.

Viewing the meaning of the unambiguous language of the agreements *ab initio,* we conclude as a matter of law that Lucille Drobac was a guarantor under the 1977 agreement and not a principal debtor. We also conclude that, although the modification agreement could not affect her rights, because she was not a party to it, it was binding upon the participants: Lakeshore, Daniel Drobac, and the two corporations. The modification agreement, valid as to them, had the effect of accelerating the last discount date by changing that date from June 30, 1980, to December 31, 1979. Accordingly, looking only to the words of the complaint and not the merits of the underlying controversy, it is apparent that the action was not prematurely brought and should not have been dismissed on that ground.

Turning first to the question of the status of Lucille Drobac, we see no ambiguity in the 1977 agreement. As we have frequently stated:

"[A]bsent ambiguity requiring resort to extrinsic evidence, the construction of a written contract presents a question of law solely for the court's determination." *Jansen Co., Inc. v. Milwaukee Area District Board,* 105 Wis. 2d 1, 13, 312 N.W.2d 813 (1981).

Neither the trial court nor the court of appeals found any ambiguity in the agreements. Rather, they appeared to conclude that Lucille Drobac could not be a guarantor, because she was obligated by the 1977 agreement to execute mortgages on certain properties owned by her. These mortgages, however, were given as additional security for the payment of the notes which Lucille Drobac guaranteed. There is nothing in the record to show that, by virtue of these mortgages, she incurred any personal liability whatsoever. Lakeshore's remedy in case of default in respect to the mortgages was *in rem* only. It is clear that these mortgages were a part of her agreement as a guarantor and imposed no personal liability. It was

erroneous for the court of appeals to conclude that the giving of mortgages either created a personal liability or was inconsistent with Lucille Drobac's status as a guarantor. Moreover, throughout the agreement, Lucille Drobac is referred to as the *guarantor* of the F.M. and the Commercial notes. Nowhere does it appear that Lucille Drobac was required to execute a promissory note to Lakeshore. Her only obligation was to execute a guaranty of the payment of the notes and to give security for that guaranty.

Much is made of the language in paragraph 4 of the 1977 agreement. It is stated therein that:

"[I]n the event Lakeshore receives cash payments [according to prepayment or discount schedule] from any one or more of Commercial, F.M., Daniel Drobac or Lucille Drobac, then in that event, all liability of Commercial, F.M., Daniel Drobac and Lucille Drobac to Lakeshore with respect to the notes referred to herein shall be deemed fully paid, satisfied and discharged."

It is apparently the argument that, because a payment of the total obligation by Commercial, F.M., or Daniel Drobac would discharge the liability of Lucille Drobac, she is therefore, under the agreement, directly liable on the notes. This is not correct. Upon such payment she would be discharged of liability "with respect to the notes." Her liability with respect to the notes is that of a guarantor, not a principal. The liability of F.M. and Commercial in respect to the notes was as makers. Moreover, the next sentence of paragraph 4 makes clear the nature of the liability of those who are guarantors and not principals:

"Payments by guarantors shall be deemed to be payment to secure release from liability on the guaranty agreements to the extent of the amount of the payment."

Hence, a payment in full by Lucille Drobac, although it would release the liability of all other principals and

guarantors, would have the effect of releasing her of her only obligation, that of liability on the guaranty agreements. There is nothing whatsoever in either of these agreements that, as a matter of law, can be said to impose direct liability upon Lucille Drobac. She was a guarantor, and a guarantor only. Had there been an intent at the time of the preparation of the agreement to make her directly liable, it would not have been difficult to make clear the imposition of liability as a principal by plain language. This was not done. What is clear is that her liability was as a guarantor and not as a co-obligor.

Inasmuch as Lucille Drobac has been released completely by stipulation, her personal liabilities as a guarantor are moot. The question posed, however, is whether the modification of an agreement, which modification shortened the time for the principals to make payment, is valid in respect to the principal debtors and the creditor and whether that modification, in which a guarantor does not participate, affects the obligation of the guarantor. It is accepted that, "The surety can be held only to the contract which he has made." Williston, 10 *Contracts,* para. 1239, p. 763. 38 Am. Jur. 2d, *Guaranty,* para. 81, p. 1088, summarizes the general state of the law:

". . . a material alteration in the principal contract, when that alteration is made after the execution of the guaranty contract and without the consent of the guarantor, discharges the guarantor if the material alteration injures the interest of the guarantor."

Wisconsin follows that general rule. *Baumgarten v. Bubolz,* 104 Wis. 2d 210, 311 N.W.2d 230 (Ct. App. 1981).

While Lucille Drobac has indeed executed what is called a Continuing Guaranty, it is apparent that that agreement contemplates a guaranty of indebtedness as

the result of future financial transactions. It does not contemplate that, in respect to past transactions to which she has been a guarantor, she be the guarantor of changed terms in respect to those past transactions when she has not acquiesced in the changed terms. Accordingly, her status as a continuing guarantor is not applicable to the terms of the 1979 modification. While an argument can be made that the "Continuing Guaranty" should apply, as a matter of law we decline to impose that obligation upon a guarantor in the absence of explicit language. Of course, in the context of the present case, Lucille Drobac's liability is irrelevant. Lakeshore has conceded that she is not bound by the subsequent agreement, to which she was not a party, and she has been specifically released and discharged by stipulation.

The theme of Lakeshore's argument is that, given the rule that a surety is discharged when there is a material change in the contract between the principals, the assumption of the law is that that contract is valid as to those who actually participate in the change. If the change were a mere nullity, the guarantor would be bound under the original agreement and not discharged. Lakeshore's position is that, irrespective of the rights or obligations of Lucille Drobac, the modification agreement, which accelerated the time for payment, is binding upon Lakeshore, the two corporations, and Daniel Drobac individually, because they participated in the agreement. It is, therefore, asserted that, against the participating debtor corporations and the guarantor Drobac, the action was not premature. The circuit court, the court of appeals, and the defendants rely upon the statement in *Weil v. Biltmore Grande Realty Corp.*, 251 Wis. 13, 18, 27 N.W.2d 713 (1947) :

"There can be nothing more certain than that a contract can only be modified by the concurrence of all the parties to the instrument."

The parties to this litigation differ in their interpretation of the *Weil* case. The plaintiff asserts that *Weil* stands only for the proposition that a modification contract is ineffective in respect to a nonparty to the modification. The defendants assert that the issue before the court in *Weil* was whether the assenting parties could be bound by a modification agreement when a party to an original contract did not participate in the modification. Defendants contend the *Weil* court held the modification void even as to those who had assented to it. It is from this rationale that the defendants assert, in the context of this case, that the modification was a nullity, because Lucille Drobac participated in the original contract, but not in the modification.

We conclude that *Weil* is not in point in the context of the present case. It is our interpretation of *Weil* that there never was any attempt or intent to modify the original mortgage agreement. In *Weil*, the defendant corporation had defaulted on a mortgage obligation and executed a warranty deed of the premises to trustees, who represented the interests of bondholders. The trustees then issued a declaration of trust, whereby they agreed to hold title to the property and they agreed to use their best efforts to manage it to produce as large an income as possible for the bondholders. In exchange, an option was given to the corporation to repurchase the premises within a five-year period upon payment of all the principal and *interest* due on the bonds, together with other charges. Subsequently, these trustees entered into an agreement with the mortgage bondholders providing that bondholders would waive their right under the original mortgage bonds in consideration of the obligation of the trustees to manage the property and to

distribute the income to the mortgage bondholders. The corporation failed to timely exercise its option, and the trustees terminated the trust and commenced a foreclosure action. The corporation then contended the mortgage bondholders had waived their right to payment of their bonds with interest by virtue of their agreement with the trustees. In the instant case, the trial court and the court of appeals accepted the argument of the defendants that the modified agreement was void even as to those who participated in it. Both relied upon the statement in *Weil* that:

"There can be nothing more certain than that a contract can only be modified by the concurrence of all the parties to the instrument."

We conclude their application of this language from *Weil* is inappropriate here. It is clear in *Weil* that there was no intention to modify the original agreement. The original agreement was between the corporation and the bondholders, and that agreement determined the corporation's obligation in accordance with the terms of the mortgage bonds which it issued. No subsequent agreement was ever entered into between the corporation and the bondholders. When the option period during the trusteeship expired, the parties reverted to their original status, which had been held in abeyance by the interim trust agreement. The parties never purported to modify that original agreement. The statement which appears in *Weil* has little to do with the *ratio decidendi* of that case. It would appear to have been more appropriate for the court merely to have stated that there was no contract between the corporation and the bondholders that purported or intended to waive interest. The fact of the matter was that all the interim agreement provided was the handling of the income and payment of the income to bondholders in the interim. It in no way

purported to affect the indebtedness of the mortgagor corporation.

Moreover, if the statement quoted from *Weil* is given the broad application sought by the defendants in this action, it is an incorrect statement of the law. Because parties have entered into a contractual arrangement does not eliminate their continuing right under the law to contract with each other. The only limitation is that they cannot contract with each other by way of modification in a manner that affects the rights of an original contracting party who is prejudiced by the new agreement and has not assented to it.

Justice Traynor in *Hotle v. Miller,* 334 P.2d 849 (1959), relying upon Corbin *Contracts,* and Williston, *Contracts,* stated that any contract can be discharged or modified by the subsequent agreement of the parties. He reasoned that parties, by entering into a contract, do not contract away their power to contract in the future, because it is the law, not private agreements, which determines the essential elements of a valid contract. He recognized that the parties can change the relationships between themselves and that a new contract is valid, although such subsequent contract cannot diminish the rights nor increase the obligations of original signatories to the agreement; but, as between themselves, the assenting parties are bound. *See* also, *Morley-Murphy Company v. Van Vreede,* 223 Wis. 1, 6, 269 N.W. 664 (1936), which states that, when there is a material alteration in a contract, the modified contract is a nullity in respect to *"non-consenting parties."* (Emphasis supplied.)

If Lucille Drobac were viewed as a debtor, we would conclude that her obligations were not accelerated to her detriment by the modification agreed to by the assenting parties in the 1979 understanding, because her respons-

ibilities and rights would be measured by the original contract and not by the agreement in which she did not participate, but the obligations of the assenting parties are changed. No one asserts that her duties, as an obligor, if she were one, are changed by the modification.

As stated above, however, we conclude that she was a guarantor only and, accordingly, was discharged from that sole responsibility when the terms of the contract between Lakeshore and the two corporations of which she was a guarantor were materially altered. But in respect to the assenting parties, the contract is valid; and in the event there was a proved default, the last date on which payment could be made without discount privileges was December 31, 1979, as agreed to by the assenting parties. Accordingly, the cause of action was not premature in respect to Commercial Construction Company and F.M. Land Corporation, as principals, and as against Daniel Drobac, as guarantor. It was, of course, premature in respect to Lucille Drobac. Her obligation was extinguished by virtue of the material alteration in the contract to which she was a guarantor. Her status is now irrelevant because of the stipulation of the parties.

We reverse the decision of the court of appeals and remand to the circuit court for further proceedings on the plaintiff's complaint.

*By the Court.*—Decision reversed and cause remanded.

CECI, J., took no part.