712 F.2d 295
 FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate
capacity, Plaintiff-Appellant,
v.
David R. MANION, Mary D. Manion, Joanne Manion, individually
and as the Personal Representatives of the Estate of James
R. Manion, Mervin H. Edwardsen, Barbara Edwardsen, Earl R.
Lenger, Relocation Development Corp. and Relocation Leasing
Corp. a/k/a Relo Leasing Corp., Defendants-Appellees.
 No. 82-2662.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 9, 1983.
Decided July 14, 1983.
 
 Brian C. Tyndall, Cook & Franke, S.C., Milwaukee, Wis., for plaintiff-appellant.
 John A. Busch, Michael Best & Friedrich, Milwaukee, Wis., for defendants-appellees.
 Before PELL and CUDAHY, Circuit Judges, and GIBSON, Senior Circuit Judge.*
 PER CURIAM.
 
 
 1
 Federal Deposit Insurance Corporation (FDIC), an appointed receiver of the American Bank and Trust Co. (Bank), brought this diversity contract action against Christian Zillig and the other defendants, claiming in part that Zillig was a continuing guarantor on a Mortgage Note executed by Relocation Development Corp. ("Relo") in favor of the Bank and later extended for one year pursuant to an extension agreement between Relo and the Bank. The district court[1] on mutual motions for summary judgment ruled that Zillig could not be held as a guarantor on the extended Mortgage Note because the extension materially altered Zillig's rights and obligations, Zillig was not a signatory to the extension agreement, and Zillig had revoked his continuing guaranty a year prior to the extension; and thus granted Zillig's motion for summary judgment. FDIC duly appealed. For the reasons set forth herein, we affirm.
 
 I.
 
 2
 On September 15, 1971, Zillig, along with four other individuals, signed a "Joint and Several Guaranty (Unlimited)" guarantying the obligations of Relo to the Bank. On March 19, 1973, the Bank loaned $450,000 to Relo pursuant to a Mortgage Note. The Note bore interest at four percent (4%) above the prime rate, interest was payable monthly, and the principal was to be paid in full on or before March 18, 1975. The Note was secured by a Mortgage on real estate located in Calumet County, Wisconsin. In connection with the Note transaction, Zillig and four other individuals each executed a document entitled "Individual Guaranty (Unlimited)," which was identical to the earlier executed "Joint and Several Guaranty." Both guaranties signed by Zillig contained the following language:
 
 
 3
 [T]he undersigned hereby promises and agrees to pay or cause to be paid to said Bank all loans, drafts, overdrafts, endorsements, accounts, checks, notes, interest and all other indebtedness, obligations and liabilities of every kind and description, whether of the same of a different nature, now existing or owing or which may hereafter exist or become due or owing (hereinafter referred to as indebtedness, obligations and liabilities) by Relocation Development Corp. (hereinafter designated "debtor"), whenever the same, or any part thereof, shall be due, including interest thereon and all costs, expenses and reasonable attorney's fees at any time paid or incurred in endeavoring to collect such indebtedness, liabilities or obligations, or any part thereof.
 
 
 4
 * * *
 
 
 5
 Said Bank need take no steps whatsoever to realize on any securities for said indebtedness, obligations and liabilities, and from time to time and without notice may surrender or release all or any such securities, and grant extensions of time to said principal debtor, and renew or extend any of said indebtedness, obligations or liabilities or any security or collateral therefor.
 
 
 6
 * * *This is a continuing guaranty and shall not be revoked by death, and shall be binding upon the heirs, executors, administrators and assigns of the undersigned and shall continue in force under any and all circumstances as to all indebtedness, obligations and liabilities contracted or incurred prior to the receipt by said Bank of written notice of the revocation hereof.
 
 
 7
 On April 8, 1974, Zillig mailed a letter to the Bank, which stated, in part:
 
 
 8
 Please be advised that I am herewith rescinding all guaranties executed by myself as they may pertain to any new or additional loans as may be executed to any of the aforementioned Companies, and Corporation.
 
 
 9
 Included in "aforementioned Companies, and Corporation" was Relocation Development Corporation.
 
 
 10
 When the Mortgage Note became due approximately one year later, on March 18, 1975, Relo and the Bank executed an extension agreement, entitled "Extension of Mortgage." Under the terms of the extension agreement, Relo promised to pay the principal sum of $450,000 to the Bank on March 18, 1976. The extension agreement further provided that the interest on the face amount would accrue at 10 1/2% (instead of the former rate of 4% above the prime rate), payable semi-annually.
 
 
 11
 The extension agreement was effected pursuant to a restructuring of several loans from the Bank to Relo. Interest on the original $450,000 Note, which was secured by a mortgage and the guaranties of Zillig and four other individuals, was brought current and the principal on the Note was reduced by $100,000 and the obligation was recast as a $350,000 debt, which was secured by a mortgage and the guaranties of the four individuals other than Zillig who had executed the earlier guaranties. Unlike Zillig, these four other individuals were given notice of the new extension agreement and they each executed new guaranties.
 
 
 12
 On October 21, 1975, the Bank was declared insolvent and the FDIC was appointed receiver. Relo defaulted on the Note as extended by the extension agreement. FDIC brought this contract action against Zillig as a guarantor on the Note. The district court ruled that Zillig was not bound by the extension of the Note because it materially altered his obligation as a guarantor and was executed nearly a year after he revoked his continuing guaranty as to "new and additional loans." FDIC appeals, claiming Zillig executed a continuing guaranty which was irrevocable as to extensions on the Note.
 
 II.
 
 13
 Under Wisconsin law[2] and the generally accepted view, a material alteration in the contract between the creditor and the principal made after the execution of the guaranty contract and without the consent of the guarantor discharges the guarantor. Lakeshore Commercial Finance Corp. v. Drobac, 107 Wis.2d 445, 319 N.W.2d 839, 840, 844 (1982); 10 S. Williston, A Treatise on the Law of Contracts, § 1239, at 763-64 (3d ed. 1967). Underlying this rule is the maxim that "[t]he surety can be held only to the contract which he has made ... [and] cannot be held according to the terms of the new contract for he never assented to it." 10 Williston, id.
 
 
 14
 It is similarly well settled under Wisconsin law and under the majority view that a binding agreement by which the creditor gives an extension of time for performance is a material alteration of the guarantor's obligations under the principal agreement and thus discharges a guarantor who has not consented to the extension of time. Braasch v. Bonde, 191 Wis. 414, 211 N.W. 281, 292 (1926);[3] 10 Williston §§ 1222-1223, at 726-29; 72 C.J.S. Principal and Surety § 162 (1951). There are two fundamental reasons for discharging the guarantor when the creditor extends the time of performance on the principal contract: first, the extension is a material alteration which increases the guarantor's risk by increasing the probability of the principal's default and decreasing the principal's ability to reimburse or exonerate the guarantor; second, the extension limits the guarantor's right to pay at any time and proceed immediately against the principal by way of subrogation. 10 Williston § 1225, at 731-32; Zastrow v. Knight, 56 S.D. 554, 229 N.W. 925, 930 (S.D.1930).
 
 
 15
 Applying the foregoing principles of law to the facts here, we believe the district court properly determined that Zillig was discharged from any obligations on the Note because the extension agreement between the Bank and Relo was made without Zillig's consent and materially altered Zillig's obligations to the Bank. The extension of time for payment on the Note was, as a matter of law, a material alteration of Zillig's obligations on the Note. Braasch, 211 N.W. at 282; 10 Williston §§ 1222-1223, at 726-29. Zillig clearly notified the Bank of his intention not to be bound by any material alteration by his letter of April 18, 1974, revoking his guaranty as to "any new or additional loans." See John Deere Co. v. Babcock, 89 Wis.2d 672, 278 N.W.2d 885, 886 (1979). Though Zillig's letter did not expressly state that his revocation applied to an extension on the Note, it nevertheless had the natural and intended effect of revoking his guaranty as to all material alterations of his obligations on Relo's present indebtedness, including an extension on the time for payment on the Note. Indeed, the Bank's own failure to request Zillig to execute a new guaranty when the extension agreement was made, even though the Bank had requested and received new guaranties from the other four prior guarantors, manifests the Bank's belief that Zillig had effectively revoked his guaranty as to any extension on the Mortgage Note. Also, in a memorandum written contemporaneously with the extension agreement, the Bank did not list Zillig as a guarantor on the newly extended Mortgage Note.
 
 
 16
 FDIC's primary contention here is that Zillig consented to the extension agreement by virtue of executing continuing guaranties in 1971 and 1973. FDIC refers to the clauses in those earlier guaranties giving the Bank the right to renew or extend any of Relo's indebtedness and the clause providing that Zillig's continuing guaranty "shall continue in force under any and all circumstances as to all indebtedness, obligations, and liabilities contracted or incurred prior to the receipt by said Bank of written notice of the revocation hereof." FDIC claims these provisions establish Zillig's continuing guaranty which was irrevocable as to extensions of time on the Note.
 
 
 17
 FDIC principally relies on the rule stated in First New Jersey Bank v. FLM Business Machines, Inc., 130 N.J.Super. 151, 325 A.2d 843, 848-850 (1974), that where a guaranty expressly includes the guarantor's consent to be bound by extensions of the original obligations, the guaranty is irrevocable as to such extensions. However, First New Jersey Bank is clearly inapposite to the present case. The contract of guaranty at issue in that case provided specifically that even after revocation of the guaranty the guarantor "shall nevertheless remain liable ... with respect to [the original obligations], and any renewals, extensions or other liabilities arising out of the same...." 325 A.2d at 846, 849-50. The First New Jersey Bank court found this clause dispositive in holding the guarantor liable for an extension effected after notice of revocation was received. Id. 325 A.2d at 849-50. That court accordingly distinguished Merchant's National Bank v. Cressey, 164 Iowa 721, 146 N.W. 761, 762, 764-65 (1914), noting that the guaranty executed in the Cressey case did not contain an express promise to be responsible for extensions and renewals made subsequent to a revocation. As in the Cressey case, and unlike in the First New Jersey Bank case, the guaranties executed by Zillig here contain no express promise to be responsible for extensions made after revocation.
 
 
 18
 The reasoning in First New Jersey Bank is substantially in accord with the court's reasoning in Lakeshore Commercial Finance Corp. v. Drobac, 107 Wis.2d 445, 319 N.W.2d 839 (1982). In Lakeshore, the court held that a guarantor who had executed a continuing guaranty was discharged from his obligations when the terms of the principal contract were materially altered and the guarantor had not agreed to the material alteration. 319 N.W.2d at 840, 844. In doing so, the court addressed the contention, similar to FDIC's contention here, that the continuing guaranty itself established the guarantor's consent to the material alteration of the principal contract. The court concluded that it would be improper to interpret the continuing guaranty as establishing the guarantor's consent to a subsequent material alteration in the absence of explicit language in the continuing guaranty establishing such consent.
 
 
 19
 We simply cannot accept FDIC's claim that the provision in Zillig's guaranties giving the Bank the power to extend Relo's indebtedness established Zillig's consent to renewals or extensions made subsequent to Zillig's express revocation of the guaranties. That provision, reasonably interpreted in the context of the entire transaction, only describes the Bank's powers until the time when Zillig notified the Bank of his revocation of the continuing guaranty. Interpreting that provision to apply to extensions made after Zillig revoked the continuing guaranty would be at odds with the rules of construction applied in First New Jersey Bank, Cressey, and Lakeshore. Furthermore, FDIC's proffered interpretation is belied by the Bank's own actions in failing to list Zillig as a guarantor of the newly extended credit and in failing to request Zillig to execute a new extension agreement, where the Bank had requested and received new guaranties from the other four guarantors. The Bank's actions here clearly evidence a belief that Zillig had effectively revoked his guaranty as to any extension or renewal on the Mortgage Note.
 
 
 20
 Judgment AFFIRMED.
 
 
 
 *
 The Honorable Floyd R. Gibson, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, is sitting by designation
 
 
 [1]
 The Honorable Terence T. Evans, United States District Judge, Eastern District of Wisconsin
 
 
 [2]
 The parties agree that Wisconsin law is controlling in this diversity case
 
 
 [3]
 Braasch held that while "mere forbearance to sue upon an overdue indebtedness ... is not sufficient of itself to operate as a discharge of sureties ... a valid, distinct and definite agreement to forbear" would operate to discharge a surety not participating in the agreement. Braasch v. Bonde, 211 N.W. at 282