Edward A. BAUMGARTEN and Home Savings & Loan Association, Plaintiffs,

v.

G. Allen BUBOLZ, Clarence DeLeeuw, Robert P. Hoeppner, Milan E. Stary, and Bob Carew Insurance, Inc., Defendants,

Thomas H. LONSWAY, a/k/a Thomas J. Lonsway, a/k/a Thomas Lonsway, Defendant-Third-Party Plaintiff-Respondent,

J & J REC. CORP., a/k/a J & J Records Corp., Defendant-Appellant, Bud MEWS, Third-Party Defendant-Appellant.†

Court of Appeals

*No. 81–253. Submitted on briefs August 17, 1981.—Decided September 22, 1981.*
(Also reported in 311 N.W.2d 230.)

† Petition to review denied.

211

212

For the appellants the cause was submitted on the briefs of *Bruce Chudacoff* of Appleton.

For the respondent the cause was submitted on the brief of *Richard A. Stack, Jr.* and *Sigman, Shiff, Janssen, Stack & Wenning* of Appleton.

Before Foley, P.J., Dean, J., and Dykman, J.

FOLEY, P.J.    J & J Rec. Corp. and Bud Mews appeal from a judgment holding them jointly and severally liable to indemnify Thomas Lonsway for claims arising out of J & J's default on a land contract.  The issues are:

(1) Is Mews's guaranty of J & J's debt void because Lonsway misrepresented the amount due on the land contract and, if not, is Mews's liability limited to the amount Lonsway represented to be due?

(2) Is the method used to calculate the amount of interest due on the land contract correct?

(3) Is the finding that fair value was received for property sold at a foreclosure sale supported by the evidence?

## FACTS

Through a series of assignments, Lonsway acquired a land contract vendee's interest in commercial property owned by Edward Baumgarten.  Lonsway transferred his interest in the property to J & J and, as a part of the transfer agreement, J & J agreed to pay the balance due on a land contract.  Lonsway warranted that the balance due on the land contract was $125,000, and Mews personally guaranteed J & J's payment.  When J & J discovered that the balance due on the land contract was in fact nearly $139,000, J & J sued Lonsway and obtained a judgment for the excess amount.  Lonsway paid this judgment.  When J & J subsequently failed to make payments on the land contract, Baumgarten and Home Savings and Loan Association, an assignee of Baumgarten's remaining interest in the property, commenced this action for specific performance.

The trial court entered a judgment requiring performance by J & J, Mews, Lonsway, and others holding an interest in the land contract.  The judgment provided that if the defendants were unable to perform, the prop-

erty would be sold, and that if the sales proceeds were insufficient to satisfy the amount due, the plaintiffs could apply for a deficiency judgment. This judgment was modified to exclude J & J, Mews, and Lonsway from liability until Lonsway's claim for indemnification against J & J and Mews could be determined in the event a deficiency arose. Two foreclosure sales were then held, and the court confirmed the second sale. As the sales proceeds were insufficient to satisfy the amount due on the land contract, a deficiency judgment was entered. After Lonsway's claim for indemnification was determined, the judgment upon which this appeal is based was entered.

## MEWS'S OBLIGATIONS AS GUARANTOR

As an affirmative defense, Mews contended that Lonsway's misrepresentation of the balance owed on the land contract voided his agreement to guaranty J & J's performance of the contract. The trial court stated that the doctrine of *res judicata* barred Mews from litigating his obligation to indemnify Lonsway based on the earlier judgment against Lonsway.

Whether an action is barred by the doctrine of *res judicata* is dependent upon a factual finding that the issues of a controversy were, or could have been, litigated in an earlier action. *See Gohr v. Beranek,* 266 Wis. 605, 609–10, 64 N.W.2d 246, 249 (1954). While the trial court made no specific findings of fact on this issue, we may affirm the trial court's conclusion if the record demonstrates that the trial court reached a result that the evidence would sustain if there was a specific finding. *Hochgurtel v. San Felippo,* 78 Wis. 2d 70, 86, 253 N.W.2d 526, 533 (1977).[1]

---

[1] The trial court found only that Mews's claim was barred by "principles of *res judicata.*" Our conclusion is based on a somewhat different theory of law. It is, however, immaterial what ground

We conclude that the evidence in the record supports the dismissal of Mews's affirmative defense. As a general rule, any change in an agreement between a principal and creditor that results in larger responsibilities or liabilities on the part of the principal, made without the consent of the guarantor, acts as a discharge of the guarantor. *See* 10 Williston on Contracts § 1239 at 763 (3d ed. 1967). *See also, Morley-Murphy Co. v. Van Vreede,* 223 Wis. 1, 7, 269 N.W. 664, 666 (1936). A guarantor may, however, waive his right to release if he has knowledge of and assents, either expressly or by implication, to changes in the obligation he has assumed. *Bank of Commerce v. Riverside Trails,* 52 Ill. App. 3d 616, 620, 367 N.E.2d 993, 997 (1977); *Minnesota Federal Savings and Loan Association v. Central Enterprises of Superior, Inc.,* 311 Minn 46, 50, 247 N.W.2d 46, 50 (1976). We conclude that, by implication, Mews waived the changes in the obligation and is therefore barred from setting up Lonsway's misrepresentation as a defense.

In determining whether a guarantor has waived his right to object to changes in an obligation, the relationship of the guarantor in a transaction must be examined according to the intent of the parties, as evidenced by the nature of the transaction. *Bank of Commerce,* 52 Ill. App. 3d at 620, 367 N.E.2d at 997. Here, J & J contracted with Lonsway by the authority of its president, Mews. Mews, in his personal capacity, guaranteed J & J's performance. He necessarily had full knowledge of the original contract and the legal action that resulted in payment to J & J of the excess balance

is assigned by the trial court for its ruling if it is in fact correct. *Wintersberger v. Pioneer Iron & Metal Co.,* 6 Wis. 2d 69, 73, 94 N.W.2d 136, 139 (1959).

of the land contract. He was not an innocent victim to be protected by the equity power of the courts. *Cf. Associates Financial Services Co. v. Eisenberg*, 51 Wis. 2d 85, 186 N.W.2d 272 (1971). (Corporation's guarantor also a director of the corporation.)

Where the principal's assent is induced by a creditor's fraudulent or material misrepresentation, the contract is voidable by the principal if he is justified in relying on the misrepresentation. *First National Bank and Trust Company of Racine v. Notte*, 97 Wis. 2d 207, 222, 293 N.W.2d 530, 538 (1980). Where the principal's obligation is voidable, it is the principal's choice either to affirm the contract and seek damages or to rescind the contract. *Id.*, at 225, 293 N.W.2d at 539. J & J affirmed the contract and recovered damages from Lonsway. Having elected its remedy, J & J was barred from later seeking rescission. *See Stadler v. Rohm*, 40 Wis. 2d 328, 335–36, 161 N.W.2d 906, 909–10 (1968).

The estoppel of J & J also bars Mews. Because the misrepresentation Lonsway made to J & J must have also been made to Mews, J & J's decision to sue Lonsway for misrepresentation can reasonably be deemed to have been undertaken with the implied consent of Mews.[2]

---

[2] Our conclusion that Mews can be held to have knowledge of Lonsway's misrepresentation and J & J's subsequent suit is based not only upon the fact that he signed the agreement in both his personal and corporate capacities, but also because: (1) In his answer to Lonsway's third-party complaint, Mews admitted the allegation that he was the president of J & J Rec. Corp; (2) as indicated by the judgment entered in this case, J & J Rec. Corp. and Mews share identical addresses; and (3) at the hearing on Lonsway's motion to dismiss Mews's affirmative defense, Mews's attorney used the personal pronouns "he" and "his," *e.g.*, Mews, in referring to J & J's past action against Lonsway. The reasonable inference from these facts is that Mews had knowledge of J & J's actions. *See Reed v. Leups*, 38 Wis. 352, 359 (1875).

J & J's election thus barred Mews from seeking rescission of his agreement to guarantee J & J's performance. *See Bank of Commerce*, 52 Ill. App. 3d at 622–23, 267 N.E.2d at 998–99; *Minnesota Federal Savings and Loan Association*, 311 Minn. at 50, 247 N.W.2d at 50.

For the reasons stated above, we also find no merit in Mews's contention that his guaranty was limited to the sum originally represented to be due on the land contract. After discovering Lonsway's misrepresentation, J & J could have sought rescission of the agreement. Had J & J successfully rescinded the agreement, Mews's obligation would have been extinguished. Additionally, even though J & J chose to affirm the contract, Mews could have protected his personal interests by requiring that the proceeds of the judgment be applied to the balance due on the land contract rather than paid directly to J & J. It is ordinarily a responsibility of a surety or guarantor to see to it that the principal performs his duty. *Minnesota Federal Savings and Loan Association*, 311 Minn. at 52, 247 N.W.2d at 51. In that case, as here, this rule is particularly applicable because Mews, as J & J's president, was in the best position to see that J & J acted in accord with his personal interests.

## CALCULATION OF INTEREST

J & J and Mews contend that the method by which the interest on the land contract was calculated resulted in interest being compounded on interest. We do not reach the merits of this contention because we conclude that by failing to raise this objection in the principal action for performance of the land contract when the amount due was established, J & J and Mews waived their right to now challenge the amount due.

In the judgment granting the plaintiffs' request for specific performance of the land contract, the sums remaining due on the land contract were set forth. J & J and Mews had the opportunity to challenge the amount due at that time. This judgment determined the rights of all parties holding interest in the property, and their rights vested at the time the judgment was entered. The subsequent modification of the judgment in no way affected the amount the court found due on the contract, but only prevented the enforcement of the judgment against Lonsway, J & J, and Mews until their individual claims were determined.

THE PROPERTY'S FAIR VALUE

J & J and Mews contend that the evidence does not support the finding that a foreclosure sale bid of $110,-000 was a fair price for the property.[3] We conclude that the evidence supports the trial court's finding that fair value was received and that a deficiency judgment was therefore proper.

The decision to confirm the results of a foreclosure sale is vested within the sound discretion of the trial court. Its order will not be reversed on review except for a clear abuse of discretion. *Linton v. Schmidt*, 88 Wis. 2d 183, 194, 277 N.W.2d 136, 141 (1979).

It is well settled that the mere inadequacy of a bid price is not a sufficient reason for refusing to confirm a foreclosure sale. *See Citizens Bank of Sheboygan v. Rose*, 59 Wis. 2d 385, 387, 208 N.W.2d 110, 111 (1973). Instead, refusal to confirm a sale is warranted only when the inadequacy has resulted from mistake, misapprehension or inadvertence, or when the price is so in-

---

[3] The first foreclosure sale resulted in a high bid of only $90,000, which the trial court refused to confirm.

adequate as to shock the conscience of the court. *Id.* To conclude that a price shocks the conscience of the court is another way of saying that the price is inadequate as a matter of law. *Id.,* at 389, 208 N.W.2d at 112. We conclude that the bid price in the present case is not inadequate as a matter of law and that the trial court did not abuse its discretion in confirming the sale.

The trial court's decision was based upon the testimony of three witnesses. Home Savings and Loan presented testimony of its appraiser, Raymond Imhoff, whose primary expertise was in the appraisal of residential property. Imhoff testified that he had appraised the property in 1975 and at that time found it to be worth $118,000. At the hearing, he valued the property from $80,000 to $100,000 and attributed its decline in value to, among other factors, its history of disruptive use. He also testified that because of potential sewage disposal problems, the property was not well suited to residential development, but instead was most suited to continued limited commercial use.

Two witnesses testified in behalf of parties who were defendants in the action. The first, John Pfefferle, an appraiser with experience in appraising commercial property, valued the property at $152,000. He testified that his opinion of the property's value was based upon the property's potential use for high density residential development, such as condominiums. He noted that to be suitable for such uses, the property would probably have to be incorporated into a nearby sanitary sewerage district. The second defense witness, G. Allen Bubolz, was a defendant in the action and admitted having an interest in the property. Bubolz, a real estate broker, valued the property at $163,400 to $166,000. His evaluation of the property was also based upon its potential residential development, and he too noted the need for sewer services.

In determining the fair value of property, the trial court is to consider the price that an able and willing buyer would reasonably pay for the property for that use to which the property has been or reasonably may be put. *First Wisconsin National Bank of Oshkosh v. KSW Investments, Inc.*, 71 Wis. 2d 359, 367–68, 238 N.W.2d 123, 128 (1976). A review of the testimony indicates that each witness's opinion of the property value conformed to the standard discussed in *First Wisconsin National Bank of Oshkosh*. Imhoff, on the one hand, based his appraisal on the uses to which the property had been previously put. Pfefferle and Bubolz, on the other hand, based their valuations according to uses to which the property reasonably might be put in the future. It was for the trial court to weigh each witness's testimony and, from that testimony, make findings as to the property's fair value. The appellants have not shown, nor does the record indicate, that the bid price was inadequate as a matter of law or that the trial court abused its discretion in confirming the second foreclosure sale.

*By the Court.*—Judgment affirmed.