**ALIEN, INC. and Alistair Company, Ltd., Plaintiffs–Appellees,**

v.

**Lewis FUTTERMAN and Alma Equities Corporation, Defendants– Appellants.**

No. 94CA1026.

Colorado Court of Appeals, Div. IV.

Sept. 14, 1995.

As Modified on Denial of Rehearing Nov. 16, 1995.

Dunn, Abplanalp & Christensen, P.C., John W. Dunn, Vail, Fairfield and Woods, P.C., John M. Tanner, Denver, for plaintiffs-appellees.

Rubner & Kutner, P.C., Joan B. Burleson, Wendy S. Wagner, Denver, for defendants-appellants.

Opinion by Judge DAVIDSON.

Defendants, Lewis Futterman and Alma Equities Corporation (Alma), appeal from the summary judgment entered in favor of plaintiffs, Alien, Inc., and Alistair Company, Ltd. We affirm in part, reverse in part, and remand.

The following facts are not disputed. Futterman is the president and sole stockholder of Alma. In May 1989, Alma purchased a hotel and restaurant in Vail, Colorado (the

property) from Alien for $3,900,000. Alien received a $600,000 down payment and provided a purchase money loan to Alma for the remaining $3,300,000, secured by a deed of trust on the property. Alien later assigned the note and deed of trust to Alistair. Alma renovated and developed the property into a hotel and restaurant operating under the name "L'Ostello."

In the spring of 1991, Alma defaulted on its loan. To avoid a bankruptcy filing by Alma, the parties negotiated an agreement allowing a "friendly foreclosure." In return, Alien agreed to lease the property to and allow continued operation of the hotel and restaurant by Bienvenue!, Inc. (Bienvenue), a new corporation formed by Futterman. Alien also agreed to give Bienvenue an option to purchase the property, to allow encumbrance of the property to secure financing for additional renovation, and to execute a back-up lease for the restaurant only, in the event the lease for the property were terminated.

Pursuant to this agreement, plaintiffs foreclosed on the deed of trust in May 1991, and the lease and option to purchase were executed between the parties. Futterman personally guaranteed the obligations under the lease. Although the parties were unable to agree on certain aspects of the back-up restaurant lease, they executed a letter of intent "to work together in resolving any remaining issues in order to execute [such a lease]."

Alistair subsequently provided the loan to Bienvenue for renovation of the property, and Bienvenue accordingly executed a promissory note with Futterman as unconditional guarantor. When Bienvenue was unable to make rent payments in November and December 1991, plaintiffs commenced an unlawful detainer action against Bienvenue and Futterman. Prior to any hearing in the action, Bienvenue filed for bankruptcy.

Plaintiffs obtained relief from the automatic stay in bankruptcy proceedings, and an expedited hearing on possession was held in the trial court. Bienvenue filed an answer at that hearing asserting, as pertinent here, affirmative defenses of fraud and equitable mortgage and counterclaims for breach of contract and fraudulent inducement to con-

tract. Futterman, individually, neither answered nor appeared at the hearing.

At the conclusion of that hearing, the trial court awarded possession of the property to plaintiffs.

Futterman and Alma then initiated an action in federal district court against plaintiffs, alleging breach of contract, fraudulent inducement of contract, promissory estoppel, and conversion of personal property, and requesting declaratory judgments that an equitable mortgage existed and that Futterman was released from the guarantees. Futterman and Alma further requested an injunction against plaintiffs' use of the trade name "L'Ostello."

Futterman and Alma also recorded a notice of *lis pendens* on the property, giving notice of their federal court claims.

Plaintiffs then filed an amended and supplemental complaint in the state court action and against Futterman as guarantor of the lease and the note. Plaintiffs also requested a declaratory judgment that Futterman and Alma had no rights in the property. In their joint answer, Futterman and Alma asserted, as pertinent here, only a defense of unjust enrichment.

Plaintiffs then moved for partial summary judgment against Futterman as guarantor and for a declaratory judgment that neither Futterman nor Alma had any interest in the property. Shortly thereafter, Futterman and Alma, without leave of court, filed as counterclaims the same claims for relief asserted in the federal court action. Plaintiffs immediately moved to strike the counterclaims.

Futterman and Alma then responded to plaintiffs' motion for partial summary judgment, alleging fraudulent inducement of contract, unjust enrichment, and equitable mortgage. In their reply, plaintiffs requested release of the notice of *lis pendens*.

The trial court struck Futterman's and Alma's counterclaims and granted plaintiffs' motion for partial summary judgment, finding that neither Futterman nor Alma had a claim to the property. The court later

amended its order and released the *lis pendens.*

Bienvenue's pending counterclaims against plaintiffs previously had been assigned to Futterman by Bienvenue's bankruptcy trustee. Bienvenue's counterclaims were then tried to a jury and Bienvenue was awarded damages on its claims of fraudulent inducement and promissory estoppel.

Futterman and Alma now appeal from various orders and from the summary judgment entered against them.

Preliminarily, we note that, throughout the litigation and on appeal, all parties have submitted inconsistent and contradictory pleadings and briefs, each asserting at different times either that Bienvenue and Alma are alter-egos of Futterman or that they are separate and distinct entities. However, no factual finding was made by the trial court that Alma and Bienvenue were mere alter-egos of Futterman; thus, we shall consider them as separate entities for purposes of this appeal.

Similarly, there are also inconsistent assertions, and no findings by the trial court, as to which entities are bound by the various agreements at issue here. Nevertheless, because the parties appear to be in agreement in their briefs on appeal that Bienvenue executed the lease, the option to purchase, the letter of intent and the note, and that Futterman guaranteed the lease and the note, we accept these as undisputed facts.

## I.

■ On appeal, Futterman asserts three interrelated issues concerning: unjust enrichment in his capacity as guarantor of Bienvenue's obligations; his liability as guarantor in light of the alleged fraud perpetrated on the obligor, Bienvenue; and his defense that he was fraudulently induced to enter into his guaranties of the lease and note. Although arguments pertaining to these issues are intermingled in the briefs, we conclude that each must be separately addressed because a guaranty is a separate and distinct contract from the underlying obligation being guaranteed. *See Burkhardt v. Bank of America,* 127 Colo. 251, 256 P.2d 234 (1953).

■ Hence, although a guarantor is entitled to assert personal defenses to the separate guaranty contract, he or she is not always entitled to rely on a principal's defenses or counterclaims to the underlying obligation. "While the *extent* of a guarantor's liability certainly does not exceed the maker's underlying obligation, the actual *liability* of the guarantor may exist even when the maker . . . is not liable on the note." *United States v. Little Joe Trawlers, Inc.,* 776 F.2d 1249, 1252 (5th Cir.1985).

Accordingly, we consider each argument in turn. We agree with Futterman that summary judgment was improperly granted on his claim that he was fraudulently induced into signing the guaranties. We do not agree, however, that summary judgment on his defenses of unjust enrichment and fraudulent inducement of the obligor was improper.

## A.

■ Based on his claim that genuine issues of material fact exist as to whether he was fraudulently induced to enter into his contracts of guaranty, Futterman contends that the trial court erred in entering summary judgment against him as guarantor of the lease and the note. We agree.

■ Summary judgment is proper only if there is a clear showing that there is no genuine issue as to any material fact, and the burden so to demonstrate is upon the movant. *Persichini v. Brad Ragan, Inc.,* 735 P.2d 168 (Colo.1987). All doubts are resolved against the movant. *Moffat County State Bank v. Told,* 800 P.2d 1320 (Colo. 1990).

Here, the record indicates that genuine issues of material fact exist as to whether plaintiffs' promise to negotiate a restaurant lease—which promise Futterman alleges induced him to sign the guaranties—was made without a present intention to fulfill that promise. *See Kinsey v. Preeson,* 746 P.2d 542 (Colo.1987).

■ Nevertheless, plaintiffs argue that, because Futterman did not plead the affirmative defense of fraud in his answer to their

amended complaint, and because Futterman's counterclaim of fraudulent inducement was stricken as untimely by the trial court, the defense of fraudulent inducement was not properly raised and the court therefore did not err in granting the summary judgment. We do not agree.

 Fraud is an affirmative defense which must be pled with particularity. C.R.C.P. 8(c) & 9(b). A party waives all affirmative defenses and objections not presented in the answer, *Duke v. Pickett*, 168 Colo. 215, 451 P.2d 288 (1969), but an improper assertion of an affirmative defense must be objected to or such defect is waived. *Cox v. Pearl Investment Co.*, 168 Colo. 67, 450 P.2d 60 (1969).

In his response to plaintiffs' motion for partial summary judgment, Futterman claimed for the first time that he was defrauded into signing the guaranties. Although we agree with plaintiffs that this defense is more properly asserted in an answer, nevertheless, it was stated with sufficient particularity and supported by affidavit such that it should have been treated as being incorporated in Futterman's answer for the purpose of technical compliance with C.R.C.P. 8(c). *See Stotler v. Geibank Industrial Bank*, 827 P.2d 608 (Colo.App.1992) (ambiguous affidavit stating facts comprising unpled defense of fraud sufficient to withstand motion for summary judgment); *cf. Cox v. Pearl Investment Co.*, *supra*.

 Moreover, Futterman's claim of fraudulent inducement was addressed by plaintiffs in the trial court in their reply brief without objection as to the manner in which it was raised. Therefore, their argument to the contrary notwithstanding, plaintiffs have waived any objections they may have had to the assertion of the defense. *Compare Cox v. Pearl Investment Co.*, *supra* (improper assertion of affirmative defense waived by failure to object) *with Union Insurance Co. v. Kjeldgaard*, 775 P.2d 55 (Colo.App.1988) (issue first raised in response to motion for judgment on the pleadings improperly considered when objected to by opposing party).

### B.

 Futterman also contends that summary judgment was improper as to his claim that plaintiffs' fraudulent inducement upon Bienvenue, the principal obligor, relieves him from liability under his guaranties. Under the circumstances here, however, Futterman cannot maintain a defense of fraudulent inducement of the principal. Thus, we find no error.

 One claiming fraudulent inducement must elect between avoiding the contract and affirming the contract and seeking damages. *See Trimble v. City & County of Denver*, 697 P.2d 716 (Colo.1985). Even though under certain circumstances a guarantor's liability is co-extensive with that of the principal, *see Continental National Bank v. Dolan*, 39 Colo.App. 16, 564 P.2d 955 (1977); A. Stearns, *The Law of Suretyship* § 7.1 (J. Elder 5th Ed.1951), when fraud is committed by a creditor on the principal, this option to affirm or rescind the agreement belongs only to the principal and not to the guarantor. *Ettlinger v. National Surety Co.*, 221 N.Y. 467, 117 N.E. 945 (1917); *see* A. Stearns, *supra*, § 7.6; *Baumgarten v. Bubolz*, 104 Wis.2d 210, 311 N.W.2d 230 (App. 1981).

 Thus, a claim seeking avoidance of a contract based on fraud is not available to the guarantor once the principal elects to affirm the underlying transaction. *See* A. Stearns, *supra*, § 7.2; *cf. Winkler v. Stoller*, 839 F.2d 1002 (3d Cir.1988) (guarantor cannot assert claim of principal previously extinguished between principal and creditor); *First Texas Service Corp. v. Roulier*, 750 F.Supp. 1056 (D.Colo.1990) (guarantor barred from asserting derivative claim after claim sold to creditor by bankruptcy trustee). This is particularly true when, as here, the guarantor controls the closely held obligor corporation and is the assignee of its claims. *See Baumgarten v. Bubolz*, *supra; see also First Texas Service Corp. v. Roulier*, *supra*.

Here, in asserting fraudulent inducement of the obligor as an affirmative defense, Futterman is seeking to avoid the underlying agreements. *See CJI–Civ 3d* 30:14 (Notes on Use); Restatement (Second) of Contracts

§ 164 comment c (1981). However, Bienvenue has elected to affirm the lease and the note and seek damages. Hence, under these circumstances, Futterman is barred from asserting this defense.

### C.

■ Futterman also contends that disputed issues of material fact relating to his assertion of the affirmative defense of unjust enrichment should have precluded as premature the entry of summary judgment against him as guarantor of the note. We disagree. Under either theory raised by Futterman, we conclude that he has no such defense as a matter of law.

Futterman's first unjust enrichment theory, as a defense to his contracts of guaranty, is that a prospective judgment against him as guarantor would unjustly enrich plaintiffs.

■ Initially, we note that unjust enrichment, which Futterman designated an affirmative defense, is more properly treated as a counterclaim in an action on an express contract, such as here. Unjust enrichment allows for recovery of the value of goods and services rendered if the underlying contract is first rescinded. *See* Restatement (Second) of Contracts § 376 comment a (1981); *CJI–Civ 3d* 30:14, 30:31 (Notes on Use); *cf. Backus v. Apishapa Land & Cattle Co.,* 44 Colo. App. 59, 615 P.2d 42 (1980).

However, if as here, "an express contract exists and an asserted implied contract is alleged to co-exist and relate to the same subject matter, there can be no implied contract between the parties because the provisions of the express contract supersede those of the implied contract." *Scott Co. of California v. MK–Ferguson Co.,* 832 P.2d 1000, 1002 (Colo.App.1991).

■ The theory of unjust enrichment assumes that a benefit of some nature has been conferred by the party seeking recovery. *See Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n,* 649 P.2d 1093 (Colo.1982). However, Futterman has no claim that any judgment when collected would confer an unjust benefit on plaintiffs unless and until the contracts of guaranty are first rescinded. But, if the contracts are avoided, any benefit Futterman alleges he would be obligated to confer on plaintiffs no longer exists. Thus, we agree with plaintiffs that to assert, as Futterman does, unjust enrichment as a defense to an express contract, is "to confuse the remedy with the right." *Fourth & Main Co. v. Joslin Dry Goods Co.,* 648 P.2d 178, 181 (Colo.App.1982).

■ Moreover, to the extent that Futterman argues as a second theory of unjust enrichment that the benefit conferred on plaintiffs was the improvement to the hotel, it is undisputed that such benefit was conferred by Bienvenue, not by Futterman. Thus, that claim of unjust enrichment is Bienvenue's only. And, as we have discussed, Futterman, as guarantor, is barred from seeking avoidance of the underlying agreements after the principal has elected to affirm them. *See also* Restatement of Security § 133 comment b (1941) (allowing surety when sued alone to assert principal's claim risks unsatisfactory adjustment of rights of parties).

### II.

■ Plaintiffs filed an amended and supplemental complaint in which they claimed that a controversy existed as to "the rights of *Alma* with respect to the [property]," and sought a declaratory judgment "of the rights of the *parties*." (emphases added). In their motion for partial summary judgment, plaintiffs requested a declaratory judgment that neither Alma nor Futterman had an interest in the property.

Futterman concedes that he has no claim to the property. Alma contends, however, that any issue as to its rights in the property was not properly before the trial court and that, therefore, the court improperly ruled upon this issue. We disagree.

Neither defendant raised any procedural objection to plaintiffs' request for relief, but proceeded to argue the merits of Alma's equitable mortgage claim in their brief in response to plaintiffs' summary judgment motion. Thus, the trial court correctly determined that this issue was "tried by consent." *See* C.R.C.P. 15(b); *see also Great American*

*Insurance Co. v. Ferndale Development Co.,* 185 Colo. 252, 523 P.2d 979 (1974).

Furthermore, contrary to Alma's next contention, summary judgment was properly entered on this issue as a matter of law.

To constitute a mortgage, equitable or otherwise, a conveyance of property must be meant to secure the payment of an underlying debt or obligation. *See* § 38–35–117, C.R.S. (1982 Repl.Vol. 16A); *Strauss v. Boatright,* 160 Colo. 581, 418 P.2d 878 (1966); 3 J. Story, *Commentaries on Equity Jurisprudence* § 1364 (W.H. Lyon 14th ed. 1918).

Here, the parties agreed that, as consideration for allowing foreclosure of the deed of trust given by Alma to plaintiffs, Futterman and Bienvenue would be given a lease on the property and an option to purchase the property.

There was, however, no underlying debt or obligation secured by the return of title to the property to the plaintiffs and the granting of a lease and option to Bienvenue. Any rights Alma had in the property were extinguished upon expiration of the statutory period for redemption following foreclosure.

### III.

Because his claims remained pending in federal court, Futterman contends that the trial court's order releasing the notice of *lis pendens* was error. We agree.

There is no substantive federal *lis pendens* law. Instead, Congress has provided that notice of pending federal court actions concerning real property is to be governed by the law of the state in which the property is located. *See* 28 U.S.C. § 1964 (1988); *Winkler v. Andrus,* 614 F.2d 707 (10th Cir.1980).

In Colorado, a notice of *lis pendens* may be filed "in an action wherein relief is claimed affecting the title to real property." Section 38–35–110(1), C.R.S. (1994 Cum. Supp.).

Contrary to plaintiffs' contention, although § 38–35–110, C.R.S. (1994 Cum. Supp.) does not expressly authorize the filing

of a notice of *lis pendens* in a federal action, its plain language includes filing notice of an action in any court. *Cf. Hamilton v. Smith,* 808 F.2d 36 (10th Cir.1986); *In re Certain Property Located at Lot 8,* 763 F.Supp. 150 (W.D.N.C.1991). Also, contrary to plaintiffs' contention, state law governs all procedures relating to filing a notice of *lis pendens* relating to a federal lawsuit, including those procedures pertaining to its release. *See Duncan v. Farm Credit Bank,* 940 F.2d 1099, 1101 (7th Cir.1991) ("State law governs the creation and cancellation of lis pendens in both federal and state courts"); *cf. Winkler v. Andrus, supra.*

Moreover, we perceive no rationale for distinguishing between a suit affecting title to real property which is brought in state court from one brought in federal court with respect to the recording of a notice of *lis pendens.* A notice of *lis pendens* does not constitute a lien against a property, but merely gives notice of pending litigation to persons acquiring an interest in the property. *Thomas v. Oken,* 699 P.2d 7 (Colo.App.1984). The underlying policy behind a notice of *lis pendens* is to prevent a suit involving rights in real property from being thwarted by transfers of interests in real property to persons not bound by the outcome of the suit. *Hammersley v. District Court,* 199 Colo. 442, 610 P.2d 94 (1980).

Accordingly, we conclude that the trial court had no authority to order release of the notice of *lis pendens* while the federal court action remained pending.

Alternatively, plaintiffs assert that, in any case, the trial court had equitable jurisdiction to release the notice of *lis pendens.*

Although, in certain circumstances a court may have the power to release a notice of *lis pendens* on equitable grounds, *see American Roofing Supply v. Capps,* 890 P.2d 133 (Colo.App.1994); *White v. Wensauer,* 702 P.2d 15 (Okla.1985); *Kelly v. Perry,* 111 Ariz. 382, 531 P.2d 139, 141 (1975), plaintiffs raised no such argument in the trial court, and the amended order releasing the notice of *lis pendens* contains no reference to an equitable basis for relief. Instead, the trial court's

decision is based on its finding that defendants have no interest in the property.

Because no grounds for the exercise of equitable jurisdiction were raised, we decline to consider that argument for the first time on appeal. *Messler v. Phillips,* 867 P.2d 128 (Colo.App.1993).

## IV.

Finally, defendants contend that the trial court erred in granting summary judgment declaring that neither Futterman nor Alma has any right or interest in the trade name, "L'Ostello." Because the record reveals genuine issues of material fact concerning the alleged transfer of the name, we agree.

Plaintiffs base their claim of ownership to the name, "L'Ostello," on the lease provision that states,

> As additional consideration for the leasehold granted by Lessor to Lessee pursuant to the terms hereof, ... Lessee does hereby bargain, sell, assign, transfer, convey and forever set over unto Lessor the furniture, fixtures, equipment and other property described or referred to in Exhibit "B" attached hereto, and any and all other fixtures, equipment, furniture, machinery and other personal property owned by Lessee and located on, attached to or used in connection with the Premises and the business operated thereon.... The personal property hereby sold to Lessor does not include furniture, fixtures, equipment or other property acquired by Lessee and used in connection with the restaurant on the premises, which personal property shall remain Lessee's....

The trial court found that this paragraph in the lease operated to convey all rights to the name, "L'Ostello," to plaintiffs as a matter of law.

Here, according to defendants' pleadings and certain documents submitted to the trial court in response to plaintiffs' summary judgment motion, although Bienvenue executed the lease, Alma owned and registered the trade name "L'Ostello." Accordingly, because Alma was not a party to the lease, there is a genuine issue of material fact whether the rights to the trade name could be transferred solely by operation of that agreement. Nor is there any indication in the record that there was any separate transfer of the trade name by any other means.

## V.

Because of our disposition of this appeal, we deny plaintiffs' request for sanctions pursuant to C.A.R. 38. *See Mission Denver Co. v. Pierson,* 674 P.2d 363 (Colo.1984).

The judgment is affirmed with respect to the summary judgment entered against defendants on their claim of equitable mortgage, against Futterman on his claim of unjust enrichment, and against Futterman to the extent that he asserts fraudulent inducement of Bienvenue as a defense to his guaranties. The judgment is reversed with respect to the summary judgment entered against Futterman on his affirmative defense that he was fraudulently induced to enter into his contracts of guarantee, against defendants with respect to any rights or interests they may have in the name, "L'Ostello," and with respect to the order releasing the *lis pendens* on the property. The cause is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

MARQUEZ and KAPELKE, JJ., concur.