Opinion by JUDGE TAUBMAN
*801 ¶ 1 Jerry Mullins, plaintiff, appeals the trial court's judgment in favor of defendant, Medical Lien Management Inc. (MLM), in an interpleader action Mullins initiated, and MLM's counterclaims for breach of contract and declaratory judgment. Addressing an issue of first impression, we conclude the trial court did not err in permitting MLM to litigate its counterclaims, even though it did not reassert them in responding to Mullins's amended complaint. We also reject Mullins's challenges to the trial court's discovery rulings and ruling allowing MLM's witness to testify without being certified as an expert. Accordingly, we affirm.
I. Background
¶ 2 This case has a complex procedural background, and we summarize the relevant portions here.[1]
¶ 3 This interpleader action stems from settlement proceeds recovered by Mullins from Betty S. Ferrell and her insurer for injuries Mullins sustained when Ferrell rear-ended Mullins's vehicle. The settlement totaled $16,141.16, $7, 520 of which Mullins's law firm, Darrell S. Elliott, P.C. (DSE), withheld pursuant to their fee agreement.
¶ 4 When the settlement occurred, MLM claimed to hold a medical lien of $17,081.10 on the settlement funds. According to MLM, the lien represented charges for care provided to Mullins by SpineOne P.C., a medical services provider, as a result of injuries sustained by Mullins in the car accident. SpineOne later assigned the lien to MLM.[2]
¶ 5 In light of MLM's claimed interest in the settlement funds, Mullins filed an interpleader action in the trial court to determine rightful ownership of the $16,141.16. The complaint alleged that Mullins disputed the extent of his indebtedness, and that he claimed an interest in the settlement funds superior to that of MLM.[3] The complaint did not dispute the existence or validity of MLM's medical lien.
¶ 6 MLM asserted numerous affirmative defenses and counterclaims for breach of contract and declaratory judgment. In August 2010, MLM moved for summary judgment on all claims. Before the trial court decided the summary judgment motion, the case proceeded to trial on September 21, 2010. At trial, Mullins's DSE attorney informed the court that he had not been in contact with Mullins for approximately two years and did not know his whereabouts. Accordingly, the trial court dismissed the case because the DSE law firm had prosecuted it without communicating with Mullins. The court also sanctioned DSE for bringing the case without Mullins's consent.
¶ 7 In March 2011, DSE moved the trial court to reconsider its dismissal and order of sanctions. The court granted the motion, concluding that it had erred in dismissing the case and sanctioning DSE without first holding an evidentiary hearing regarding DSE's contact with Mullins. Following a hearing at which DSE presented evidence that Mullins had authorized the firm to bring the interpleader *802 action, the trial court reversed its dismissal and order of sanctions.
¶ 8 Following a trial, in a detailed and thorough order, the trial court found in favor of MLM on all claims and counterclaims. Specifically, the trial court found that (1) MLM had a valid lien on the settlement funds, (2) the lien required Mullins to pay for any amount not covered by the settlement funds, (3) the cost of Mullins's medical services was reasonable and necessary, and (4) Mullins had not paid MLM the amount owed under the lien and, thus, had breached the lien agreement. Accordingly, the trial court found MLM was entitled to the $8,381.79 of interpleader funds, and awarded MLM an additional $8,699.31[4] on its breach of contract claim. The trial court also awarded MLM prejudgment interest.
¶ 9 In reaching these conclusions, the trial court articulated four alternative rationales: (1) summary judgment should be granted in favor of MLM, nunc pro tunc, because MLM's summary judgment motion demonstrated that there was no issue of material fact and that it was entitled to judgment as a matter of law; (2) MLM should be granted summary judgment based on the doctrine of judicial estoppel; (3) MLM proved that it was entitled to judgment by presenting sufficient evidence at trial; and (4) following the trial, the doctrine of judicial estoppel required the trial court to grant judgment in favor of MLM.
¶ 10 As discussed below, we affirm the trial court on its third rationale and, accordingly, do not address the others.
¶ 11 This appeal followed.
II. Abandonment of Counterclaims
¶ 12 Mullins raises an issue of first impression in Colorado by asserting that the trial court erred in ruling in favor of MLM on its counterclaims because MLM had abandoned its counterclaims when it failed to reassert them in its answer to Mullins's amended complaint. We conclude that under the circumstances presented here, MLM did not waive or abandon its counterclaims.
A. Standard of Review
¶ 13 Where the underlying facts are undisputed, we review de novo whether a party waives or abandons its counterclaim by failing to reassert that counterclaim with an answer to an amended pleading. See Roberts v. Novinger, 815 P.2d 996, 996-97 (Colo.App.1991) ; see also Nikolai v. Farmers Alliance Mut. Ins. Co., 830 P.2d 1070, 1073 (Colo.App.1991) ("[W]hether waiver has occurred is typically a question of fact, [but] it may be decided as a matter of law when the material facts are undisputed.") (citation omitted).
B. Relevant Facts
¶ 14 Mullins filed an amended complaint shortly after filing the original complaint in this action. In his motion to file the amended complaint, Mullins explained that the original complaint "inadvertently and incorrectly identified" the amount to be decided in the interpleader action as the total settlement sum of $16,141.16. The motion clarified that DSE had a statutory lien for its attorney fees and costs, and, therefore, the amount at issue was the remainder of the settlement total after the deduction of those fees and costs. Accordingly, the amended complaint reduced the amount at issue from $16,141.16 to $8,381.31. Other than the amended dollar amount, the amended complaint was identical to the original.
¶ 15 In response to the amended complaint, MLM filed an "answer to amended complaint for interpleader." With the exception of the change in the dollar amount from $16,141.16 to $8,381.31, the answer to the amended complaint and the affirmative defenses were identical to MLM's original answer. However, the answer to the amended complaint omitted the counterclaims which MLM had pleaded in the original answer.
¶ 16 After MLM answered the amended complaint, the parties nonetheless continued to litigate the underlying merits of the interpleader *803 action and the counterclaims. For example, in its initial disclosures, MLM stated that it sought the full amount owed by Mullins ($17,081.10), rather than the $8,381.31 subject to the interpleader action. Additionally, over a year after MLM answered the amended complaint, Mullins acknowledged the existence of the counterclaims by repeatedly referencing them in response to MLM's motion to compel. In doing so, Mullins did not object to the counterclaims or otherwise suggest that MLM had waived or abandoned them.
¶ 17 Approximately one and a half years after MLM filed its answer to the amended complaint, Mullins asserted for the first time, in his opposition to MLM's motion for summary judgment, that MLM's failure to reassert its counterclaims constituted a waiver or abandonment of the counterclaims. The trial court rejected Mullins's assertion, concluding that the counterclaims were properly pleaded.
C. Discussion
¶ 18 As a general rule, parties are required to plead in response to an amended complaint. Specifically, C.R.C.P. 15(a) provides in relevant part, "A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within [fourteen] days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders...." See also Currier v. Sutherland, 218 P.3d 709, 715 (Colo.2009) ("Once a plaintiff files an amended complaint, the original complaint is superseded, and the defendant must answer the amended complaint.").
¶ 19 Mullins asserts that MLM waived or abandoned its counterclaims by failing to reassert them when it filed its amended answer. Mullins, however, does not cite Colorado authority to support his assertion, nor are we aware of any. Other jurisdictions that have considered similar assertions have reached differing conclusions.
¶ 20 In Ground Zero Museum Workshop v. Wilson, 813 F.Supp.2d 678, 705-06 (D.Md.2011), the plaintiffs filed an initial complaint, to which the defendant responded with an answer and counterclaims. The plaintiffs then filed two amended complaints, and on each occasion the defendant filed an answer without reasserting his counterclaims. Nevertheless, two days after filing the answer to the seconded amended complaint, the defendant moved to amend his counterclaims. The plaintiffs opposed the motion to amend the counterclaims, asserting that the counterclaims were waived or abandoned when the defendant failed to reassert them in his answers to the amended complaints. Id .
¶ 21 The court disagreed with plaintiffs for two reasons. First, the court noted that Fed.R.Civ.P. 13, which governed the counterclaims, does not mandate that counterclaims be brought exclusively in an answer.[5] Rather, it concluded that a counterclaim is separate from an answer, and, therefore, one does not necessarily have to accompany the other. Id . at 706. Second, the court noted that "despite [the defendant's] failure to reassert the counterclaims when answering Plaintiffs' first and second amended complaints, [the defendant] ha[d] otherwise manifested his intent to pursue the counterclaims throughout the case history." Id . Thus, the court reasoned, the defendant had "not failed to prosecute [his counterclaims] or otherwise waived his right to pursue them." Id . Accordingly, the court concluded that the counterclaims had not been waived. See also Cairo Marine Serv., Inc. v. Homeland Ins. Co. of New York, 2010 WL 4614693, at *1 (E.D.Mo. No. 4:09CV 1492 CDP, Nov. 4, 2010) (unpublished order) (party does not waive counterclaim by failing to reassert it in a response to an amended complaint if there is no cause to deny the party leave to amend its responsive pleading); Hitachi Med. Sys. Am., Inc. v. Horizon Med. Grp., 2008 WL 5723531, at *4-5 (N.D.Ohio No. 5:07CV02035, Aug. 29, 2008) (unpublished order).
*804 ¶ 22 On the other hand, in Johnson v. Berry, 228 F.Supp.2d 1071, 1079 (E.D.Mo.2002), the trial court concluded that a party waived his counterclaims by failing to replead them in response to an amended complaint. Accordingly, the court held that "[b]y failing to plead in response to the first amended complaint, and therein to replead his counterclaim, [the defendant] abandoned his counterclaim, which effectively dropped from the case." Id . In reaching this conclusion, the court noted that the defendant had failed to prosecute his counterclaim, and that because of the advanced stage in the proceedings, it was inappropriate to grant the defendant leave to amend his pleadings and reassert his counterclaim because it would likely prejudice the plaintiff. Id .
¶ 23 We conclude that the court's reasoning in Ground Zero is persuasive as applied to the facts presented in this case, for four reasons.
¶ 24 First, the Ground Zero court's interpretation of Fed.R.Civ.P. 13 is persuasive in our analysis of C.R.C.P. 13 -the rule governing counterclaims in Colorado. See Garcia, ¶ 7. Thus, we interpret C.R.C.P. 13 to include no express requirement that counterclaims be repleaded in response to an amended complaint.
¶ 25 Second, similar to Ground Zero, the record here does not demonstrate MLM's intent to waive, abandon, or otherwise not prosecute its counterclaims. Rather, MLM's motion for summary judgment, which included a request for judgment on the counterclaims, as well as its other motions, demonstrates that MLM did not intend to waive its counterclaims. See generally NationsBank of Ga. v. Conifer Asset Mgmt. Ltd., 928 P.2d 760, 763 (Colo.App.1996) ("Waiver [of a party's right] may be explicit, or it may be implied by a party's conduct if the conduct is unambiguous and clearly manifests an intention not to assert the right...."). Similar to the defendant in Ground Zero, MLM manifested its intent to pursue its counterclaims throughout the litigation here.
¶ 26 Third, we conclude that Johnson is distinguishable because, here, Mullins asserted no reason to prohibit MLM from pursuing its counterclaims, other than its alleged technical failure to comply with C.R.C.P. 13. Cf . Johnson, 228 F.Supp.2d at 1079. Mullins does not assert that MLM failed to otherwise prosecute its counterclaims. Nor does he assert that the failure to include the counterclaims in the answer to the amended complaint materially prejudiced him. See generally Cairo, 2010 WL 4614693, at *2.
¶ 27 Mullins did not object to the alleged deficiencies in MLM's pleadings until a year and a half after they occurred. During this period, Mullins litigated issues involving the counterclaims, and at no point alleged that the deficient pleadings caused him prejudice. Thus, the delayed objection reflects an argument related only to procedure rather than substance. See generally C.R.C.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). Accordingly, unlike in Johnson, neither the parties nor the trial court identified any reason for denying MLM the ability to pursue its counterclaims.
¶ 28 Fourth, although not considered by the trial court,[6] C.R.C.P. 15(b) supports our conclusion, because Mullins failed to timely object to MLM's failure to replead the counterclaims. Specifically, the rule provides:
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.
¶ 29 Under this rule, "when an issue is tried before a court without timely objection or motion, the issue shall be deemed properly before the court despite any defect in the pleading."
*805 Butler v. Behaeghe, 37 Colo.App. 282, 286, 548 P.2d 934, 937 (1976). Thus, the rule favors trying issues that have "been intentionally and actually tried," despite procedural defects. Gabel v. Jefferson Cnty. Sch. Dist. R-1, 824 P.2d 26, 32 (Colo.App.1991) (quoting Clemann v. Bandimere , 128 Colo. 24, 28, 259 P.2d 614, 616 (1953) ).
¶ 30 Accordingly, Colorado courts have held that where a claim is not included in the pleadings, but is litigated without objection in a motion for summary judgment, that issue is properly before the court despite the deficient pleadings. See, e.g., Town of Carbondale v. GSS Props., LLC, 169 P.3d 675, 679-80 (Colo.2007) ; Alien, Inc. v. Futterman, 924 P.2d 1063, 1069 (Colo.App.1995).
¶ 31 Under federal Rule 15(b) -which is substantively similar to C.R.C.P. 15(b) -in order to determine whether a party implicitly consented to try an unpleaded issue, courts consider "whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment." Rivinius, Inc. v. Cross Mfg., Inc., 977 F.2d 1171, 1175 (7th Cir.1992) (quotation omitted).
¶ 32 Here, unlike in GSS Properties and Futterman, Mullins objected to MLM's counterclaims in his response to MLM's motion for summary judgment. Nevertheless, Mullins and MLM litigated issues related to the counterclaims for approximately a year and a half after Mullins contends MLM waived those claims. Accordingly, the record demonstrates that MLM intended to litigate the counterclaims, and that Mullins was on notice of that intent. Similarly, the record demonstrates that Mullins was afforded the opportunity to fully litigate the counterclaims and had the opportunity to present evidence in his defense against the counterclaims. Thus, under these circumstances, and consistent with C.R.C.P. 15(b), we conclude that Mullins failed to timely object to MLM's continued prosecution of its counterclaims, and therefore implicitly consented to the counterclaims being tried, despite any alleged deficiency in the pleadings.
¶ 33 Therefore, we conclude that the trial court properly determined that MLM did not waive or abandon its counterclaims.
III. Discovery Violations
¶ 34 Mullins asserts that the trial court abused its discretion by admitting evidence and testimony presented by MLM because MLM failed to provide notice of the evidence to Mullins prior to trial. We disagree.
A. Standard of Review
¶ 35 Trial courts have broad discretion in making evidentiary decisions. Wal-Mart Stores, Inc. v. Crossgrove, 2012 CO 31, ¶ 7, 276 P.3d 562. Accordingly, we will not disturb a trial court's evidentiary ruling absent a showing of an abuse of that discretion. Id . Similarly, we review a trial court's imposition of discovery sanctions for an abuse of discretion. Pinkstaff v. Black & Decker (U.S.) Inc., 211 P.3d 698, 702 (Colo.2009). A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. Liscio v. Pinson, 83 P.3d 1149, 1155 (Colo.App.2003).
B. Trial Exhibits
¶ 36 Mullins asserts that the trial court abused its discretion by allowing MLM to present trial exhibits that were not disclosed prior to trial. We disagree.
¶ 37 C.R.C.P. 16.1(k)(6) governs discovery of trial exhibits and requires "[a]ll exhibits to be used at trial which are in the possession, custody or control of the parties [to] be identified and exchanged by the parties at least [thirty-five] days before trial." Where a party fails to make pretrial disclosures, a trial court may impose appropriate sanctions. See Camp Bird Colo., Inc. v. Bd. of Cnty. Comm'rs, 215 P.3d 1277, 1291-92 (Colo.App.2009). In deciding whether to impose sanctions, "[t]he controlling question is ... whether the party's failure to timely disclose the evidence will prejudice the opposing party by denying that party an adequate opportunity to defend against the evidence." Id . at 1292 (emphasis in original).
¶ 38 Here, MLM concedes that it did not disclose its trial exhibits in accordance with Rule 16.1. Nevertheless, it asserts that its failure to disclose the exhibits did not prejudice *806 Mullins, and, thus, the trial court did not abuse its discretion in not imposing sanctions. We agree with MLM, for two reasons.
¶ 39 First, Mullins's only argument on appeal with respect to prejudice is that MLM's failure to timely disclose its trial exhibits precluded him from objecting to the exhibits' authenticity pursuant to C.R.C.P. 16(k)(6). Mullins does not, however, provide any argument regarding why such an objection would have been meritorious. Further, despite Mullins's claimed disadvantage in his ability to object to the exhibits' authenticity pursuant to C.R.C.P. 16(k)(6), the trial court explicitly found in its written order that the exhibits were authentic. Accordingly, even if Mullins had been afforded the opportunity to object, his objection would likely have been unsuccessful.
¶ 40 Second, we reject Mullins's assertion that he was surprised by MLM's failure to disclose its trial exhibits. MLM's trial exhibits one through fourteen were identical to the exhibits MLM had attached to its summary judgment motion. The remaining exhibits were documents Mullins had given to MLM as part of the parties' initial discovery disclosures.[7] Accordingly, Mullins was familiar with the content of the trial exhibits, and, therefore, their late disclosure could not have caused Mullins surprise that would have required exclusion of the exhibits. See Camp Bird Colo., 215 P.3d at 1292 (where undisclosed trial exhibits were produced to the other party at an earlier stage in the litigation, no prejudice resulted from their late disclosure that would warrant exclusion). Thus, the trial court did not abuse its discretion by admitting the trial exhibits.
C. MLM's Witness
¶ 41 Mullins asserts that the trial court abused its discretion by allowing MLM to present testimony from a witness who was not disclosed prior to trial. We disagree.
¶ 42 C.R.C.P. 16.1(k)(3) requires parties to
serve written disclosure statements identifying the name, address, telephone number, and a detailed statement of the expected testimony for each witness the party intends to call at trial whose deposition has not been taken, and for whom expert reports pursuant to subparagraph (k)(2) of [Rule 16.1 ] have not been provided.
Such notice must be served ninety-one days before trial by parties asserting claims, fifty-six days before trial by parties defending against claims, and thirty-five days before trial for any rebuttal witnesses. Id .
¶ 43 Here, MLM called its vice president of operations, Bill Dampier, to testify regarding the reasonableness of the medical lien. Despite arguing at length that MLM had failed to disclose Dampier's identity and testimony pursuant to C.R.C.P. 16.1(k)(3), a point which MLM concedes, Mullins does not argue that the violation materially prejudiced his case. Nor does our review of the record reveal any potential prejudice. Mullins had notice of Dampier's identity, because Dampier's affidavit in support of MLM's motion for summary judgment contained statements similar to his testimony. Further, Dampier's affidavit was the only affidavit submitted in connection with MLM's motion for summary judgment. Accordingly, Mullins reasonably could have anticipated that Dampier would testify and could have anticipated the content of his testimony. Thus, the trial court did not abuse its discretion by allowing Dampier to testify. See Todd v. Bear Valley Vill. Apartments, 980 P.2d 973, 978 (Colo.1999).
IV. Expert Versus Lay Testimony
¶ 44 Mullins asserts that the trial court abused its discretion by allowing MLM's witness to testify as a lay witness about the reasonableness and necessity of SpineOne's medical bills. We disagree.
A. Relevant Facts
¶ 45 MLM introduced Dampier as its only witness at trial and offered his testimony as lay testimony.
¶ 46 On direct examination, Dampier explained that in his role as vice president of *807 operations at MLM, he oversaw MLM's day-to-day operations regarding lien requests and approvals. He further explained that through his position he was familiar with medical bills:
My experience with medical bills is I receive the medical bills on a daily basis from a number of providers across the state; a lot of times for the same procedures, just done by a different provider. So I see the familiarity of the costs involved from one provider to [ ] another doing the same procedure.
He then stated that based on his experience reviewing medical bills, he believed that the bills here were reasonable and necessary.
¶ 47 Dampier then explained that he had worked with Mullins's attorneys in the underlying personal injury case, but at no point, according to Dampier, had Mullins or his attorneys objected to the reasonableness of the costs.
B. Discussion
¶ 48 Whether the trial court abused its discretion turns on whether the admission of Dampier's testimony was proper under CRE 701, because MLM did not seek to qualify him as an expert under CRE 702.
¶ 49 CRE 701 provides that a nonexpert witness may testify in the form of an opinion if: (1) the opinion is based on the perception of the witness; (2) the opinion is helpful to a clear understanding of a fact at issue; and (3) the opinion is not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Thus, the critical question becomes whether the witness's testimony is based on specialized knowledge. People v. Ramos, 2012 COA 191, ¶ 12, 396 P.3d 21, 2012 WL 5457354. "To determine whether an opinion is based on specialized knowledge, we look to whether ordinary citizens can be expected to have known the information or have had the experiences that form the basis of the opinion." Id . at ¶ 13. In doing so, we "also consider whether the opinion results from 'a process of reasoning familiar in everyday life,' or 'a process of reasoning which can be mastered only by specialists in the field.' " People v. Veren, 140 P.3d 131, 137 (Colo.App.2005) (quoting People v. Rincon, 140 P.3d 976, 983 (Colo.App.2005) ).
¶ 50 We conclude that Dampier's conclusions did not involve a process of reasoning that could not be reached by an ordinary citizen without specialized training or experience. Rather, Dampier's conclusions were based on simple comparisons of prices and deductive reasoning. Accordingly, we conclude that the trial court did not abuse its discretion by allowing Dampier to testify as a lay witness about the reasonableness of the medical bills.[8]
V. Hearsay
¶ 51 Mullins asserts that the trial court abused its discretion by admitting numerous exhibits because the exhibits were hearsay not subject to an exception to the hearsay rule. We disagree.
¶ 52 Hearsay is an out of court statement offered into evidence for the truth of the matter asserted. CRE 801. Hearsay is inadmissible unless it falls under an exception to the rule. CRE 802.
¶ 53 Here, Mullins asserts that three exhibits admitted by the trial court contained inadmissible hearsay-a C.R.C.P. 26(a)(2) expert disclosure and a pretrial management order-both of which Mullins filed in the underlying personal injury case, and a copy of the medical lien signed by Mullins.
¶ 54 We conclude that all three documents constituted admissions by a party opponent under CRE 801(d)(2)(A) and (B) because each exhibit was either prepared or executed by Mullins or his attorney, or, in the case of the expert disclosure, was a statement in which Mullins manifested a belief in its truth. See S. Park Aggregates, Inc. v. Nw. Nat'l Ins. Co., 847 P.2d 218, 223 (Colo.App.1992) ("An out-of-court statement by an agent is admissible against the principal as an admission *808 if the statement concerns a matter within the scope of the agent's agency and is made during the existence of the agency relationship."). Accordingly, the trial court did not abuse its discretion by admitting the documents.
VI. Consideration
¶ 55 Mullins next asserts that the trial court abused its discretion by excluding evidence of the amount of consideration MLM gave to SpineOne in purchasing the medical lien. We disagree.
¶ 56 Even if we assume that MLM was required to prove consideration, we conclude that it did so by introducing a copy of the "Assignment of Patient Account," which provided that SpineOne assigned the medical lien to MLM "[f]or value received and/or to be received." The exact value of that consideration was immaterial, and, thus, the trial court did not abuse its discretion in excluding evidence regarding the exact value of the consideration. See Forsyth v. Ryan, 17 Colo.App. 511, 512, 68 P. 1055, 1056 (1902) (value of consideration paid by assignee to assignor is immaterial regarding the debtor's obligations to the assignee under a note).
VII. Conclusion
¶ 57 Because we conclude that the trial court properly admitted all evidence at trial, and did not err as a matter of law on any legal issue, we conclude that the court properly entered judgment in favor of MLM on all claims and counterclaims.
VIII. Appellate Attorney Fees and Costs
¶ 58 MLM requests an award of attorney fees and costs incurred on connection with this appeal. In making its request for fees and costs, MLM summarily asserts that Mullins's appeal is frivolous, without providing further explanation. Cf. Castillo v. Koppes-Conway, 148 P.3d 289, 292 (Colo.App.2006) (an appeal can be frivolous as filed, frivolous as argued, or both). However, "[p]ursuant to C.A.R. 39.5, if attorney fees are otherwise recoverable for a particular appeal, the party claiming them must specifically request them, and state the legal basis therefor, in the party's principal brief to the appellate court." Ward v. Dep't Natural Res., 216 P.3d 84, 98 (Colo.App.2008). Because MLM provides no factual explanation for its request, its request is denied.
¶ 59 The judgment is affirmed.
JUDGE ROMÁN and JUDGE FOX concur.

Much of the procedural history of this case is relevant only to a portion of the trial court's extensive order, which sanctioned the law firm representing Mullins. The sanctions, however, are the subject of a separate appeal pending before this court. See Mullins v. Med. Lien Mgmt., (Colo.App. No. 12CA1501).

Two other medical providers, not parties to this appeal, also claimed to hold liens on the settlement proceeds. However, neither party responded to Mullins's interpleader action, and thus, the trial court entered default judgments against them.

Mullins later filed an amended complaint, alleging that the interpleaded amount was $8,381.79, after DSE subtracted its own attorney fees and costs ($7,520) from the settlement.

The $8,699.31 represents the value of MLM's lien, offset by the amount of the interpleaded funds.

Although worded slightly differently, the substance of Fed.R.Civ.P. 13 is substantially similar to C.R.C.P. 13. Thus, interpretation of Fed.R.Civ.P. 13 can be persuasive here. See Garcia v. Schneider Energy Servs., Inc., 2012 CO 62, ¶ 7, 287 P.3d 112.

We may affirm the trial court on any grounds that are supported by the record, even if not contemplated by the trial court. Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe, 107 P.3d 402, 406 (Colo.App.2004).

At trial, Mullins did not assert that the initial disclosures were voluminous. Rather, he maintained he did not have enough to object to the exhibit and witness list. The trial court gave Mullins opportunity to voir dire the witness before testifying before the jury.

To the extent that Mullins asserts that Dampier had to have been qualified as an expert to testify regarding the medical necessity of the procedures Mullins received, we need not reach this question. Our review of the record reveals that Dampier never testified regarding medical necessity.