**Brian DEWAN, Plaintiff,**

v.

**BLUE MAN GROUP LIMITED PARTNERSHIP, Blue Man Group Productions, Inc., Astor Show Productions Inc., Blue Man Boston Limited Partnership, Blue Man Boston Productions, Inc., Matt Goldman, Phillip Stanton and Chris Wink, p/k/a Blue Man Group, Defendants.**

**No. 98 CIV. 7111(RLC).**

United States District Court, S.D. New York.

Aug. 31, 1999.

Sullivan & Gallion, New York City (Charles Sullivan, Daniel J. O'Connell, of counsel), for Plaintiff.

Paul, Weiss, Rifkind, Wharton, & Garrison, New York City (Gerard E. Harper, of

counsel), John Silberman Associates, New York City (Donn Zaretsky, of counsel), for Defendants.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Brian Dewan ("Dewan") brings this action against defendants Blue Man Group Limited Partnership, Blue Man Group Productions, Inc., Astor Place Show Productions Inc., Blue Man Boston Limited Partnership, Blue Man Boston Productions Inc., Matt Goldman ("Goldman"), Phillip Stanton ("Stanton"), and Chris Wink ("Wink"), p/k/a Blue Man Group (collectively, the "Blue Man Group"), seeking a declaration of co-authorship of certain musical compositions and damages for various state law claims. Now before the court is defendants' motion to dismiss for failure to state a claim upon which relief can be granted.

## BACKGROUND [1]

Dewan is a musician who designs, constructs, composes, and performs on his own variation of the Columbian zither, a horizontal-body musical instrument. (Compl.¶ 15). In the fall of 1990, Dewan was approached by the Blue Man Group to collaborate with the Group on the score for a performance piece. (Compl.¶ 16). Dewan declined the invitation. (Compl.¶ 16). Upon further requests, Dewan agreed sometime in January, 1991, to participate in creative "jam" sessions with members of the Blue Man Group, and with Laurence Heinemann ("Heinemann") and Ian Pai ("Pai"), who are non-defendant third parties in this case. (Compl.¶¶ 17–19). Throughout the first half of 1991, Dewan composed zither lines for inclusion in the score, and performed with Heinemann, Pai, and the Blue Man Group in various North American cities. (Compl.¶¶ 19–20).

The performance piece, which ultimately became known as "Blue Man Group: Tubes" ("Tubes"), was evidently well-re-ceived. Defendants, along with their investors, formed BMGT, Inc. ("BMGT"), and in the summer of 1991, entered into an agreement for an initial six-month run beginning in November, 1991, at the Astor Place Theater in New York City, New York (the "Astor Place Theater"). (Compl.¶ 22). In the two month rehearsal period before the opening, Dewan, Heinemann, and Pai reworked the existing musical compositions, and composed entirely new musical pieces for inclusion in Tubes. (Compl.¶¶ 22–23). The vast majority of the musical score for Tubes, which is currently playing at the Astor Place Theater for an unlimited run, was composed, arranged, and honed by Dewan, Heinemann, and Pai during this rehearsal period. (Compl.¶ 23).

In the fall of 1991, plaintiff first raised concerns about his rights, and those of Heinemann's and Pai's, in the Tubes compositions. (Compl.¶¶ 24–25). Dewan requested that, prior to the opening of Tubes at Astor Place Theater, an agreement be drafted and executed between the defendants and the musicians. (Compl.¶¶ 25–26). Dewan's concerns regarding his rights were heightened by discussions of a possible studio recording of the Tubes score. (Compl.¶ 26). Defendants assured plaintiff that an agreement would be executed once the show was running. (Compl.¶ 26).

The show opened on November 16, 1991, as scheduled, to considerable financial success. (Compl.¶ 28). However, no agreement materialized, and Dewan once again requested that the defendants, together with himself, Heinemann, and Pai, jointly undertake an effort to secure the copyrights for the music and arrangement of Tubes. (Compl.¶ 29). Defendants assured plaintiff that they would file the copyright registration on behalf of themselves, Dewan, Heinemann, and Pai. (Compl.¶ 29). Goldman, Stanton, and Wink also promised

1. On a motion to dismiss pursuant to Rule 12(b)(6), F.R.Civ.P., the court is required to accept as true all factual allegations in the complaint. *See Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998).

that agreements memorializing the rights of the individual musicians in the compositions would be soon forthcoming. (Compl. ¶ 29).

By early spring of 1992, plaintiff, having received no agreement from the Blue Man Group, retained Sally Gaglini ("Gaglini") as counsel, and so informed the defendants. (Compl. ¶ 30). Shortly thereafter, Dewan obtained and presented copyright registration forms to defendants, Heinemann, and Pai, and encouraged them to complete the relevant sections of the forms. (Compl. ¶ 30). Having received no response for several weeks, Dewan brought additional forms to defendants on at least one other occasion. (Compl. ¶ 31).

In early May, 1992, the Blue Man Group, along with Heineman and Pai, agreed to meet with Dewan to sort out the nature and degree of their respective contributions to each of the musical compositions performed in Tubes. (Compl. ¶ 32). From that meeting, defendants generated an informal chart indicating the relative percentages of ownership claimed by each of the individuals present. (Compl. ¶ 32). Ownership shares were then assigned to Dewan, Heinemann, Pai, and the defendants according to each person's agreed-upon degree of participation in the composition's creation. (Compl. ¶ 32).

Despite the show's success, plaintiff decided to pursue his solo career. (Compl. ¶ 33). On June 2, 1992, Dewan played his last official performance with the Blue Man Group, although he occasionally served as a substitute performer thereafter. (Compl. ¶ 33). At the time of his departure from Tubes, defendants requested that Dewan provide them with the means to construct a zither, which was exclusively designed and owned by plaintiff. (Compl. ¶ 34). Plaintiff consented to facilitating their efforts on the express condition that he receive attribution for having designed the instrument in the Tubes program (the "Playbill") and in the liner notes of any future sound recordings. (Compl. ¶ 34). Defendants agreed to the condition, and also promised to compensate Dewan for generating the drawings, diagrams, and written instructions necessary to have another zither built. (Compl. ¶ 34). In addition to the design plans, Dewan at defendants' request familiarized his replacement performer with the zither. (Compl. ¶ 37). Although plaintiff eventually received the promised compensation, he has yet to receive attribution as the designer of the zither in the Playbill or otherwise. (Compl. ¶ 34). Moreover, defendants, relying on the designs furnished by plaintiff, had two additional zithers built without compensating Dewan or obtaining his consent or authorization. (Compl. ¶ 35).

The Blue Man Group continued to urge Dewan to participate in a studio recording, even after his departure from the show. (Compl. ¶ 38). However, Dewan stated that he would not perform for a recording until a formal agreement regarding his rights in the compositions was reached. (Compl. ¶ 38). In a June, 1992 meeting, the Blue Man Group once again tried to ascertain whether plaintiff would participate in future Blue Man Group projects, including the studio recording. (Compl. ¶ 39). Dewan reiterated his earlier requests for a formal agreement. (Compl. ¶ 39).

On July 24, 1992, Gaglini received from defendants' counsel a draft of an Administration Agreement (the "Agreement") to be executed between plaintiff and the Blue Man Group. (Compl. ¶ 40). The Agreement stated that the Blue Man Group, as the Administrator, was entitled to receive and collect the gross receipts from the compositions on behalf of co-authors Dewan, Heinemann, and Pai, subject to the condition that it pay each co-author a percentage of the net income derived from each composition. (Compl. ¶ 40). At least three drafts of the proposed Agreement were exchanged between counsel during the summer of 1992. (Compl. ¶ 41). Each of the drafts expressly acknowledged Dewan's status as a co-author in certain musical compositions. (Compl. ¶ 41). At one point, a Schedule (the "Schedule") enumer-

ating the percentage of ownership in each Tubes composition was added to the Agreement. (Compl. ¶ 43; Ex. A). Specifically, the Schedule recognized plaintiff as co-author of nine compositions, all of which are still being performed in Tubes. (Compl.¶¶ 44–45). The Schedule appeared in all subsequent drafts of the Agreement. (Compl.¶ 43).

In late July, 1992, Dewan and the defendants participated in a conference call without their respective counsel. (Compl.¶ 47). During the conference call, Goldman, Stanton, and Wink offered Dewan $10,000 as a one time payment for his copyright interests, and urged him to "leave the lawyers out of it." (Compl.¶¶ 47–48). Dewan responded that he wanted their attorneys to discuss the offer, and subsequently terminated the phone call. (Compl.¶¶ 47–48). Negotiation of the Agreement continued through October, 1992. (Compl.¶ 51). From October, 1992 to October, 1993, neither Dewan nor Gaglini received a response from defendants as to the proposed Agreement. (Compl.¶¶ 53–54). In October, 1993, Goldman contacted Gaglini to discuss the possibility of purchasing plaintiff's copyright interests in the compositions. (Compl.¶¶ 55–56). Gaglini drafted and sent a proposal based on the October, 1993 conversation; defendants, however, never responded. (Compl.¶ 56). In late 1993, Dewan was compelled to terminate his professional relationship with Gaglini because he no longer had the financial resources to fund her efforts. (Compl.¶ 57).

In 1994, Goldman, Stanton, and Wink entered into an agreement with BMGT and the newly formed Astor Show Productions, Inc. whereby they agreed to use their best efforts to complete the negotiations with plaintiff on the issue of his co-authorship status in the nine compositions. (Compl.¶ 58). Nevertheless, such negotiations were never completed nor re-initiated. (Compl.¶ 59). Meanwhile, during 1994 and 1995, Dewan unsuccessfully sought legal representation on a contingency basis. (Compl.¶ 60).

In 1995, a draft of an agreement between Goldman, Stanton, and Wink and the Blue Man Group Boston Limited Partnership, Inc. (the "Boston Agreement") contained the same schedule of ownership interests as was generated in the summer and fall of 1992. (Compl.¶ 62). In May, 1996, a letter from the Blue Man Group to Dewan's current counsel, Charles Sullivan ("Sullivan"), stated, in reference to an enclosed copy of the Boston Agreement: "Page 30 paragraph E refers to an anticipated agreement with Mr. Dewan's co-composers." (Compl.¶ 63). The Boston Agreement, however, made no reference to any anticipated agreement with plaintiff. (Compl.¶ 64).

On January 21, 1997, Sullivan contacted defendants' counsel, John Silberman ("Silberman"), reiterating Dewan's desire to renew negotiations with the Blue Man Group. (Compl.¶ 67). Silberman stated that he was in the process of establishing his own law firm, and that he would need some time before responding on behalf of the defendants. (Compl.¶ 67). On May 19, 1997, Silberman informed plaintiff's counsel that defendants had repudiated Dewan's status as the co-author of any of the compositions performed in Tubes. (Compl.¶ 68). Silberman further stated that Goldman, Stanton, and Wink had previously engaged in negotiations simply out of sympathy for Dewan. (Compl.¶ 68). Upon receiving notice that Dewan had filed a registration form with the United States Copyright Office listing himself as co-author of the compositions as issue here, defendants reiterated their contention that they never considered Dewan a co-author, in a letter dated August 21, 1998. (Compl.¶¶ 70–71).

Dewan filed complaint in this court on October 7, 1998, seeking a declaratory judgment against all defendants that he is a co-author of certain compositions in Tubes, pursuant to § 28 U.S.C. § 2201. Plaintiff also asserts state law claims, including breach of implied contract, unjust enrichment, and a claim as a third party

beneficiary. On November 30, 1998, defendants moved for dismissal, pursuant to Rule 12(b)(6), F.R. Civ. P., contending, *inter alia*, that the statute of limitations has expired on plaintiff's claim of co-authorship under the Copyright Act.

## DISCUSSION

### I. Standard for Rule 12(b)(6) dismissal

Dismissal of a complaint for failure to state a claim upon which relief can be granted is warranted when " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The court's task in determining a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *See id.* (citation and quotation marks omitted).

### II. Co-authorship claim under the Copyright Act

 Claims of co-authorship arise directly from the Copyright Act (the "Act"), 17 U.S.C. § 201(a), and are governed by the Act's statute of limitations clause, 17 U.S.C. § 507(b). Under 17 U.S.C. § 507(b), a claim arising from the Act must be filed within three years from the date that the claim accrues. A claim accrues "when a plaintiff knows or has reason to know of the injury upon which the claim is premised." *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir.1992). A plaintiff who fails to initiate a suit within the three-year limitations period is time-barred from seeking a declaration of copyright co-authorship rights and any remedies that would flow from such a declaration. *See Merchant v. Levy*, 92 F.3d 51, 56–57 (2d Cir.1996) (stating that this conclusion "promotes the principles of repose integral to a properly functioning copyright market.").

 Defendants contend that Dewan is time-barred from seeking co-authorship rights. In response, Dewan asserts that defendants are equitably estopped from relying on the statute of limitations as a defense. Equitable estoppel tolls a statute of limitations where the plaintiff knew of the existence of his cause of action, but the defendant's misconduct caused him to delay in bringing the suit. *See Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir.1995); *Netzer v. Continuity Graphic Associates*, 963 F.Supp. 1308, 1316 (S.D.N.Y.1997) (Sweet, J.). Equitable estoppel is applicable in situations where the defendant "in some way lulled the plaintiff into believing that it was not necessary for him to commence litigation." *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 50 (2d Cir. 1985). Thus, for example, "where the defendant assures the plaintiff that he intends to settle and the plaintiff, in reasonable reliance on that assurance, delays in bringing his suit until after the statute has run, the defendant may be estopped to rely on the limitations defense." *Id.*

From the facts alleged in the complaint, it is clear that Dewan was aware as early as the fall of 1991 of the facts and circumstances giving rise to a cause of action for co-authorship rights, as evidenced by his numerous attempts to execute a formal agreement. However, it also appears that defendants lulled Dewan into believing that no suit was necessary by stating, verbally and in writing, that Dewan was a co-author in the compositions, and by engaging in negotiations over an agreement during 1991 to late 1993.

The court finds, though, that after the October, 1993 offer by Goldman to purchase Dewan's rights, there were no actions taken by defendants that Dewan could have reasonably relied upon, at the time, as indications that defendants desired a settlement. While Dewan points out that the 1994 and 1995 agreements acknowledged his co-authorship status, he has not pleaded that he had contemporaneous knowledge of the agreements. In addition, even assuming that the limitations

period could be tolled during the lapse in contact between the sides from October, 1993 to May 6, 1996, the 1996 letter from defendants only served to place Dewan on notice once again that a suit was necessary to protect his rights. Although the cover letter stated that plaintiff was a co-composer, the enclosed agreement plainly indicated that defendants had no intention of entering into an agreement with Dewan.

Assuming the truth of the facts in the complaint, defendants' actions have been less than commendable. However, Dewan's reliance on defendants' previous assurances of his co-authorship status was unreasonable after late 1993 or 1994, given defendants' failure to respond to Dewan's proposed agreements, and Dewan's own awareness that he was not receiving any royalties from the performances of his compositions. By the end of 1994 at the latest, Dewan had ample reason to know a lawsuit was necessary. Faced with this knowledge, Dewan then had three full years to initiate his suit, either with the assistance of counsel or pro se. In light of Dewan's passive and unreasonable reliance on defendants' assurances, the court finds that plaintiff's claim accrued well before October, 1995. *See also Netzer,* 963 F.Supp. at 1316 (equitable estoppel not applicable where plaintiff unreasonably relies on the reassurances of a wrongdoer); *Margo v. Weiss,* 1998 WL 2558, *6 (S.D.N.Y. Jan.5, 1998) (Mukasey, J.) (same). The statute of limitations on Dewan's claim of co-authorship under the Copyright Act has therefore expired.

### III. State law claims

As all parties in this case are either residents of New York, or businesses organized under the laws of New York, and as the court has dismissed plaintiff's sole federal claim, there remains no independent basis for federal jurisdiction. *See, e.g., Castellano v. Board of Trustees,* 937 F.2d 752, 758 (2d Cir.), *cert. denied,* 502 U.S. 941, 112 S.Ct. 378, 116 L.Ed.2d 329 (1991). Accordingly, plaintiff's state claims are hereby dismissed. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Salim v. Proulx,* 93 F.3d 86, 92 (2d Cir.1996) (directing dismissal of state claims on remand) (citing *Gibbs* ). *See also* 28 U.S.C. § 1367(c)(3).

### CONCLUSION

For the reasons stated above, plaintiff's claim for a declaration of co-authorship under the Copyright Act is dismissed, pursuant to Rule 12(b)(6), F.R.Civ.P. The remaining claims are also dismissed, as the court declines to exercise jurisdiction over plaintiff's state claims, pursuant to 28 U.S.C. § 1367(c)(3).

**IT IS SO ORDERED.**