228 F.Supp.2d 1071 (2002)
Johnnie JOHNSON, Plaintiff,
v.
Charles E. BERRY and Isalee Music Company, Defendants.
No. 4:00CV1891-DJS.
United States District Court, E.D. Missouri, Eastern Division.
October 22, 2002.
*1072 Mitchell A. Margo, Curtis and Oetting, St. Louis, MO, Scott J. Orr, Orr Law Office, Sacramento, CA, for Plaintiff.
Martin M. Green, Joe D. Jacobson, Fernando Bermudez, Green and Schaaf, St. Louis, MO, Alvin A. Wolff, Jr., Brentwood, MO, for Defendants.

ORDER
STOHR, District Judge.
Plaintiff Johnnie Johnson, erstwhile pianist with defendant Chuck Berry's band, seeks relief on a number of legal theories based on his claim to be a co-creator of numerous songs allegedly written between 1955 and 1966 and copyrighted by Berry in his own name or that of his publishing company, defendant Isalee Music Company. The following are the songs at issue in this case, as identified in the first amended complaint and a subsequent amendment by interlineation:
 "Roll Over Beethoven"
 "Rock and Roll Music"
 "Sweet Little Sixteen"
 "Brown Eyed Handsome Man"
 "Nadine"
 "Thirty Days"
 "You Can't Catch Me"[1]
 "No Money Down"
 "Downbound Train"
 "Drifting Heart"
 "Too much Monkey Business"
 "Havana Moon"
 "School Days"
 "Rock and Roll Music"
 "I've Changed"
 "Reelin' and Rockin'"
 "Around & Around"
 "Carol"
 "Jo Jo Gunne"
 "Sweet Little Rock `N Roller'"
 "Almost Grown"
 "Back in the U.S.A."
 "Too Pooped to Pop"
 "Bye Bye Johnny"
 "You Never Can Tell"
 "Promised Land"
 "No Particular Place to Go"
 "Baby Doll"
 "Blue on Blue"
 "Deep Feeling"
 "Rockin' at the Philharmonic"
 "Surfin' U.S.A."
 "Wee Wee Hours."
The first amended complaint refers to these 33 songs[2] as the "Berry/Johnson Songs."
The first amended complaint contains five counts. Count I seeks a declaratory judgment against both defendants that plaintiff was a partner in the creation of, and is a co-owner of the copyrights to, the Berry/Johnson Songs. Count II seeks an accounting by both defendants of all profits from the Berry/Johnson Songs from 1955 to the present. Count III alleges that defendant Berry breached a fiduciary duty owed to plaintiff as his partner by obtaining copyrights on the Berry/Johnson Songs without Johnson, by depriving Johnson of profits, by misleading Johnson to believe he was not a co-owner of the copyright, and by taking advantage of Johnson's alcoholism and limited intellectual *1073 level. Count IV asserts a claim that Berry breached a fiduciary duty owed to Johnson under copyright law as a collaborator in the creation of the Berry/Johnson Songs. Count V alleges that Berry committed fraud on Johnson by repeatedly making material misrepresentations to lead Johnson to believe that he was not entitled to any compensation for the Berry/Johnson Songs beyond his fee as a studio musician.[3] The matter is now before the Court on defendants' motion seeking summary judgment as to each count of the first amended complaint on statute of limitations and other grounds.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Defendants first argue that Counts I, II and IV are barred by the Copyright Act's three-year statute of limitations, codified at 17 U.S.C. § 507(b): "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." The parties' arguments on the statute of limitations question raise issues both of accrual and of equitable tolling.
As the Court indicated in its earlier ruling on the motion to dismiss:
In a copyright accrual context, the Second Circuit has held that "[a] cause of action accrues when a plaintiff knows or has reason to know of the injury upon which the claim is premised." Stone v. Williams, 970 F.2d 1043, 1048 (2nd Cir. 1992); Merchant v. Levy, 92 F.3d 51, 56 (2nd Cir.1996). "A cause of action accrues when a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right." Netzer v. Continuity Graphic Associates, Inc., 963 F.Supp. 1308, 1315 (S.D.N.Y.1997). Adopting by analogy a principle from tenancy in common in real property, the Zuill [v. Shanahan, 80 F.3d 1366, 1370 (9th Cir.1996)] court noted that "[a]n express or implicit ouster of a cotenant by an unequivocal act of ownership starts the adverse possession statute of limitations running."
Johnson v. Berry, 171 F.Supp.2d 985, 989 (E.D.Mo.2001); Order of June 11, 2001 [Doc. # 31], pp. 6-7. Plaintiff argues that his "lack of legal mental competence" rendered him unable to comprehend his cause of action until unspecified occurrences "shortly before" this action was filed. Plaintiff therefore contends that legally his cause of action did not accrue, and the statute of limitations did not begin to run, until that unspecified but recent time. Pltf. Memo. in Opp. [Doc. # 62], p. 3.
For factual support for this argument, plaintiff relies principally upon the report of Claude S. Munday, Ph.D., a clinical psychologist who conducted a psychological/neuropsychological evaluation of Mr. Johnson. Dr. Munday's report expresses the following among his conclusions:
Thus, we have a gentleman of borderline defective intelligence overall, who has a distinct tendency to perseverate and difficulty with multiple lines of thought. Frankly, this is entirely consistent with his story of essentially coming to believe that he was entitled to be paid for the time he spent playing music and nothing more, and his failure then to significantly question that belief for years. Additionally, even assuming the belief had been questioned, an individual with a borderline defective intellectual level is not likely to grasp or understand the legal system such that he would appreciate the existence of a legal remedy. Thus, strictly in terms of his cognitive and intellectual capability, I do not believe *1074 Mr. Johnson recognized that there had been a wrong in terms of royalties or remuneration for his music, nor did he have the cognitive capability of pursing a remedy through the legal system.
Pltf. Exh. A [Doc. 62], p. 16. Although the psychological evaluation is, for purposes of the instant motion, unrebutted, the record also establishes that, during his 70+ years, Mr. Johnson has lived independently and been generally competent to manage his affairs unassisted.
The broad range of his deposition testimony indicates that Mr. Johnson has been married several times, had seven children, has bought and driven cars, rented various apartments, read the newspaper regularly, worked a number of jobs, led his own band, engaged agents to represent him, managed his own finances, and, in connection with music, traveled fairly extensively. He has never had any professional mental or psychological treatment. Johnson Depo., Pltf. Exh. A [Doc. # 62] (hereinafter "Depo."), pp. 37-38. Mr. Johnson testified that, even during the period when he was a heavy drinker, beginning in the 1940's, his drinking did not interfere with his understanding of money, his financial affairs generally, and his other activities. Depo. at 38-39; 54-56. Mr. Johnson stopped drinking "cold turkey" in 1989, more than 10 years before filing this suit, and has had no alcohol since. Depo. at 53.
Plaintiff does not offer a particular legal definition of mental competence in connection with his accrual argument, but appears to assert that his alleged inability to comprehend his injury or his cause of action is sufficient for the purpose urged. The Court is unpersuaded. Legal authority for plaintiff's argument is lacking. Plaintiff relies principally upon Clifford by Clifford v. United States, 738 F.2d 977, 980 (8th Cir.1984), a case which is clearly distinguishable. There the plaintiff was in a coma allegedly caused by the medical malpractice sued for in the case under the Federal Tort Claims Act. Because of the coma, the plaintiff was "at all times. . .unaware of the existence and cause of his injuries," for a reason alleged to be the defendant's own fault. Id. at 979. As further discussed below, these elements are not present in the instant case. Furthermore, in Clifford, the Eighth Circuit expressly distinguished its holding from the contrary rule applicable to "mental incapacity," noting a "well-recognized" rule that "mental incompetence generally does not toll the statute of limitations" in cases of that kind. Id. at 980.
As for knowledge of the alleged injuries, since the first recording in 1955, Mr. Johnson has clearly always been aware that he received no royalties or other payments based on the Berry/Johnson Songs, after his initial compensation for his work as a musician performing the songs in concert or in studio. Depo. at 106, 111-112, 114. Mr. Johnson also testified to his awareness that credit for the songs, as on record labels and in radio airplay, has always been limited to Mr. Berry. Depo. at 107, 108-111. Plaintiff's long-standing awareness of the fact that he was not being recognized and compensated as a co-creator of the music is thus established by the record. In the circumstances of this case, such awareness constitutes the pertinent knowledge of the injury upon which plaintiff's claims are premised.
Also dissimilar from Clifford is the fact that the intellectual limitations now urged by plaintiff can in no way be claimed to have been caused by Mr. Berry. Even as to the alcoholism on which plaintiff does not now so much rely, the evidentiary record fails to support an allegation that Mr. Berry ever encouraged Mr. Johnson's drinking. To the contrary, Mr. Johnson's deposition testimony indicates that Mr. Berry did nothing to encourage Mr. Johnson *1075 to drink, and in fact urged or even required moderation in Mr. Johnson's drinking. Depo. at 43, 47, 154, 159.
Awareness of injury and awareness of a legal cause of action are two distinct things, and the copyright cases earlier cited clearly suggest that the former is the trigger for accrual of a claim and the start of a statute of limitations. In effect, plaintiff's argument seeks to blur the two. The injury here was the failure to receive additional post-recording compensation based on the commercial success of the music, in the form of royalties, license fees and other payments. First Amended Complaint [Doc. # 49], ¶ 13. Stone and numerous other cases refer to "reason to know of the injury upon which the claim is premised" rather than reason to know of the claim premised upon the injury. 970 F.2d at 1048. When the Netzer case speaks of the point at which "a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right," it also conveys the notion that the knowledge of harm is sufficient, in that it can be expected to prompt consideration of and investigation into the existence of a legal remedy. Three copyright cases cited by plaintiff[4] do not contradict the notion that it is awareness of facts and circumstances, rather than understanding of legal rights, that causes a claim to accrue. As the Second Circuit has expressed the point:
We cannot adopt the proposition that to trigger the statute of limitations not only must plaintiff know of the facts furnishing her with a cause of action, but also that those facts are sufficient to entitle her to relief. . . .[T]he legal rights that stem from certain facts or circumstances need not be known, only the facts or circumstances themselves.
Stone v. Williams, 970 F.2d 1043, 1049 (2nd Cir.1992). Simply put, plaintiff fails to offer any legal authority supporting his contention that his alleged inability to understand his potential legal entitlements deferred the accrual of his causes of action so as to make this action timely when filed in November 2000.
In addition to these accrual issues, plaintiff argues that the statute of limitations, even if running, was tolled for two reasons: (1) Mr. Berry's conduct actively misleading plaintiff as to his cause of action and (2) the extraordinary circumstances of Mr. Johnson's limited cognitive abilities. As to the first, the Court finds as a matter of law that the evidence does not support a conclusion that Mr. Berry actively misled plaintiff as to his legal claims. When first asked in his deposition, plaintiff could identify no false statements made to him by Mr. Berry about royalties. Depo. at 114-116. He testified that Mr. Berry never made any statement to plaintiff at all concerning copyright. Depo. at 115-116. Plaintiff later testified that his assertion that Mr. Berry deceived him is based on Berry's silence, rather than on affirmative misrepresentations, in that Mr. Berry capitalized on Mr. Johnson's lack of business or legal sophistication and purposely failed to "let [Johnson] in on" things Berry knew and understood. Depo. at 154-159. Later, plaintiff testified as to one allegedly false statement by Mr. Berry to him, made after their first recording session in 1955, when Berry allegedly told Mr. Johnson that he was not "entitled" to any of the royalties, that Johnson would be paid for the recording session and that Berry would be paid in royalties if the record sold. Depo. at 220-222.
*1076 For equitable tolling or equitable estoppel to apply, the wrongdoer must make a misrepresentation of fact, not of law. "An expression of opinion alone cannot be the foundation of any equitable estoppel by representation." Buder v. Denver National Bank, 151 F.2d 520, 524 (8th Cir.1945). Mr. Berry's alleged statement about the parties' relative entitlements is a conclusion of law upon which Mr. Johnson could not reasonably rely. The assertion of one in an adverse position concerning the comparative rights of the two parties cannot support equitable tolling. See Kregos v. Associated Press, 3 F.3d 656, 661 (2nd Cir.1993). This single conclusory assertion made 45 years ago as to Johnson's and Berry's comparative legal rights, even if dishonest and dishonorable, is patently insufficient to constitute the kind of active factual deception which might support equitable tolling. The alleged statement is one of legal opinion, is not shown to be knowingly false, is not "extraordinary," and cannot be attributed with preventing Mr. Johnson from asserting his claims for 45 years thereafter.
Even if Berry's conduct tolled the running of the statute of limitations, "such tolling is not indefinite," but "lasts only so long as the fraud is effective." Stone, 970 F.2d at 1048. The tolling would have ceased once plaintiff was put on notice of the possibility of his entitlement. Id. at 1049. Once plaintiff was aware of the possibility, a duty of inquiry arises, and "plaintiff is charged with whatever knowledge an inquiry would have revealed." Id. Plaintiff's deposition testimony reveals a number of conversations over the years with other musicians, including Keith Richards, Bo Diddley and Little Richard, in which they suggested to plaintiff that he might have been a co-owner of the copyright in the Berry/Johnson Songs and therefore entitled to royalties deriving from them. Mr. Johnson testified that he had such a conversation with Keith Richards as far back as the early 1980's. Depo. at 76-78. Plaintiff testified that as a result of that conversation he joined ASCAP, thinking that the organization would be able to advise him as to his rights in that regard. Depo. at 79-80. Any tolling attributable to Mr. Berry's conduct would have ceased as of the time of this conversation, with the result that this action filed in 2000 was still substantially untimely.
Neither can the Court hold that plaintiff's limited mental condition equitably tolls the statute of limitations. Defendant is not shown to meet any standard of legal incompetence. He has lived his life independently and taken care of himself and his affairs his entire adult life, and, given the difficult circumstances of his upbringing, even before. Plaintiff cites no case in support of his argument on this point. In short, as a matter of law, plaintiff's intellectual limitations do not constitute an extraordinary circumstance of the type required to support equitable tolling.
As to the claim for an accounting in Count II, plaintiff argues that such a claim is not subject to the Copyright Act's three-year limitations period because it is purely a state law action, citing Goodman v. Lee, 78 F.3d 1007 (5th Cir.1996). In Goodman, the Fifth Circuit held that a copyright co-owner's claim for an accounting was subject to a state statute of limitations because an accounting remedy is not expressly provided for in the Copyright Act. If not wrongly decided, Goodman involved a claim of co-ownership which had been vindicated by a jury's verdict and which was itself found to have been timely asserted. By contrast, in this case, plaintiff's claim of co-ownership has been found to be untimely asserted, and has not been determined on the merits in his favor.
The Court finds the circumstances more analogous, and the rationale more *1077 sound, in Weber v. Geffen Records, Inc., 63 F.Supp.2d 458, 463, 464 (S.D.N.Y.1999):
Regardless of the title of each cause of action, plaintiff's basic claim is that because he is a co-author of the copyrighted material and a co-owner of the copyrights, defendants' copyrights should not entitle them to the full bundle of privileges that attach to copyright ownership. It is only through this basic claim that any enrichment is unjust, that any competition is unfair, and that anyone profiting must account to plaintiff. Accordingly, the Copyright Act preempts plaintiff's three state law claims: accounting, unfair competition, and unjust enrichment.
. . .
No cause of action, whether or not brought under the Copyright Act, may be premised on a time-barred challenge to a copyright. Margo v. Weiss, No. 96 Civ. 3842(MBM), 1998 WL 2558, at *9 (S.D.N.Y. Jan.5, 1998), so held in rejecting various non-copyright claims.
[P]laintiffs' claims for breach of fidcuiary duty are based on the assumption that the parties have been deemed co-authors. However, plaintiffs' claim of co-authorship is barred under federal law. . .[T]he only duty that exists between co-authors is the duty to account for profits. However, the duty to account for profits presupposes a relationship as co-owners of the copyright, a relationship plaintiffs are time-barred from asserting.
This court agrees that "[i]t would be anomalous to hold that plaintiffs are precluded from seeking a declaration of co-authorship and, at the same time, that they are permitted to claim a breach of the duties that co-authorship might impose." Accordingly, plaintiff cannot state a claim with any non-copyright cause of action that depends on a copyright claim that would be time-barred under the Copyright Act.
This Court having determined that plaintiff's claim of co-ownership of copyright is barred as untimely, the derivative claim to an accounting of profits as a co-owner is also barred.
Plaintiff's claim for breach of partnership fiduciary duty, asserted in Count III of the first amended complaint, is governed by a five-year statute of limitations under Missouri law, pursuant to § 516.120(4) R.S.Mo. Klemme v. Best, 941 S.W.2d 493, 497 (Mo.banc 1997); Lehnig v. Bornhop, 859 S.W.2d 271, 273 (Mo.App. 1993); Koester v. American Republic Investments, Inc., 11 F.3d 818, 821-22 (8th Cir.1993). For the same reasons as earlier given with respect to Counts I, II and IV, plaintiff's fiduciary duty claim based on partnership is also barred as untimely. Plaintiff's argument that the claim is timely because the partnership extended to the filing of this action is unavailing. The acts alleged to constitute the actionable breach of fiduciary duty date back to the period of the parties' alleged collaboration in creating the Berry/Johnson Songs, namely 1955 to 1966. See First Amended Complaint, ¶ 33, ¶ 9.
Count VII asserts a claim of fraud. Under § 516.120(5) R.S.Mo., "a claim of fraud also has a five-year limit, but it begins to run only upon `the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud.'" Klemme, 941 S.W.2d at 497 [quoting § 516.120(5)]. The Court's earlier analysis of the statute of limitations issues is again dispositive, particularly in view of the maximal fifteen-year period applicable to fraud claims under the particular wording of the Missouri statute. "[R]egardless of the circumstances surrounding the aggrieved party's opportunity to discover the fraud, an action for fraud can be brought, at the latest, fifteen years after its commission." *1078 In the Estate of Corbin, 66 S.W.3d 84, 93 (Mo.App.2001).
All five of plaintiff's claims, then, are subject to summary judgment in favor of defendants on statute of limitations grounds.[5] The United States Supreme Court has often considered and explained the policies behind statutes of limitation, both state and federal.
On many prior occasions, we have emphasized the importance of the policies underlying state statutes of limitations. Statutes of limitations are not simply technicalities. On the contrary, they have long been respected as fundamental to a well-ordered judicial system. Making out the substantive elements of a claim for relief involves a process of pleading, discovery, and trial. The process of discovery and trial which results in the finding of ultimate facts for or against the plaintiff by the judge or jury is obviously more reliable if the witness or testimony in question is relatively fresh. Thus in the judgment of most legislatures and courts, there comes a point at which the delay of a plaintiff in asserting a claim is sufficiently likely either to impair the accuracy of the factfinding process or to upset settled expectations that a substantive claim will be barred without respect to whether it is meritorious. By the same token, most courts and legislatures have recognized that there are factual circumstances which justify an exception to these strong policies of repose. For example, defendants may not, by tactics of evasion, prevent the plaintiff from litigating the merits of a claim, even though on its face the claim is time-barred. These exceptions to the statute of limitations are generally referred to as "tolling" and, . . .are an integral part of a complete limitations policy.
Board of Regents v. Tomanio, 446 U.S. 478, 487-88, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). Plaintiffs' claims originate in events beginning more than 45 years ago. The Court has here given consideration to each of plaintiff's arguments for relief from the applicable statutes of limitations. The Court finds that no legal basis exists to permit the litigation of these claims asserted so long after the events from which they arise.
The disposition of claims based on statute of limitations grounds is no reflection on the merits of the claims, that is, on whether, if timely brought, Mr. Johnson would have been entitled to relief from the defendants. As Justice Jackson of the United States Supreme Court observed in 1945:
Statutes of limitations. . .are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. Order of Railroad Telegraphers v. Railway Express Agency, 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788. They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate.
Chase Securities Corporation v. Donaldson, 325 U.S. 304, 314, 65 S.Ct. 1137, 89 *1079 L.Ed. 1628 (1945). On the record before it, the Court determines as a matter of law that plaintiff's privilege to litigate the claims he now asserts has expired, and his suit is now barred.

DEFENDANT BERRY'S COUNTERCLAIM
Also before the Court is defendant Berry's motion for default judgment on his counterclaim challenging Johnson's trademark registration of the phrase "The Father of Rock and Roll." Although the parties do not appear to recognize it, the motion presents an issue of civil procedure unusual in the Court's experience. The relevant procedural posture is as follows. Plaintiff's original complaint was filed on November 29, 2000. After the Court ruled on defendants' motion to dismiss, defendants filed an answer to the complaint, including defendant Berry's counterclaim, on July 2, 2001. On September 24, 2001, plaintiff was granted leave to file a first amended complaint. Defendants have filed no pleading in response to the first amended complaint, a fact which the parties overlook.
The last sentence of Fed.R.Civ.P. 15(a) requires a party to plead in response to an amended pleading. No option is given merely to stand on preexisting pleadings made in response to an earlier complaint. As the language of Rule 13(a) and (b) makes clear, a counterclaim is part of the responsive pleading. By failing to plead in response to the first amended complaint, and therein to replead his counterclaim, Berry abandoned his counterclaim, which effectively dropped from the case. That plaintiff may have been in default on the counterclaim prior to the filing of the first amended complaint does not affect this analysis where Berry did not more timely seek a default on the counterclaim, and did not oppose the filing of the first amended complaint on the ground that it would unduly revive the plaintiff's opportunity to oppose his counterclaim.
In these circumstances, Berry's motion for default judgment will be denied, as the counterclaim was abandoned by failure to prosecute it in response to the first amended complaint. Plaintiff has not sought any relief for defendants' failure to plead in response to the first amended complaint, and the Court therefore does not consider defendants' default to be an impediment to consideration of defendants' summary judgment motion. At this stage of these proceedings, however, with the trial setting imminent and all claims of the first amended complaint determined to be subject to summary judgment, the Court would not grant Berry leave to untimely answer the first amended complaint so as to replead his counterclaim.
Accordingly,
IT IS HEREBY ORDERED that defendants' motion for summary judgment [Doc. # 62] is granted.
IT IS FURTHER ORDERED that the joint motion for oral argument on defendants' motion for summary judgment [Doc. # 71] is denied.
IT IS FURTHER ORDERED that defendants' motion for default judgment on his counterclaim [Doc. # 84] is denied, as the counterclaim was abandoned by failure to prosecute it in response to plaintiff's first amended complaint.
IT IS FURTHER ORDERED that plaintiff's motion for leave to file answer to counterclaim and to deny defendant's motion for default judgment [Doc. # 87] is denied as moot.
IT IS FURTHER ORDERED that defendants' motion to bar testimony of undisclosed witness Bruce D. Bramoweth [Doc. # 72] is denied without prejudice as moot.
IT IS FURTHER ORDERED that defendants' combined motion in limine to bar opinion testimony of Claude S. Munday, Ph.D. [Doc. # 73-1] and for Daubert hearing *1080 [Doc. # 73-2] is denied without prejudice as moot.
NOTES
[1] This title is listed twice in the first amended complaint at ¶ 8b and ¶ 8x.
[2] The original complaint listed some 50 songs, a number reduced in the pleading of the first amended complaint.
[3] Earlier in the litigation, claims of copyright infringement were dismissed, both by the Court and voluntarily, because no claim for infringement can lie against a co-owner of copyright.
[4] Merchant v. Levy, 92 F.3d 51 (2nd Cir.1996); Dewan v. Blue Man Group Limited Partnership, 73 F.Supp.2d 382 (S.D.N.Y.1999); Fort Knox Music, Inc. v. Baptiste, 47 F.Supp.2d 481 (S.D.N.Y.1999).
[5] Defendants offer alternative arguments as to several counts, namely that the Court should determine as a matter of law on the record evidence that Berry and Johnson were never partners under Missouri law (relative to Count V) and that Mr. Berry made no false statements of fact to Mr. Johnson (relative to Count V). Given the dispositive effect of the statutes of limitations, the Court need not, and does not, consider these arguments.